No. 23-3410

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

---

**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,**
*Third-Party Plaintiff-Appellee,*

**FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.,**
*Third-Party Plaintiff-Appellee,*

*v.*

**DRITA PASHA KESSLER**
*Third-Party Defendant-Appellant.*

---

On Appeal From The United States District Court
Central District of California
Case No. 2:18-CV-00722-AB-JPR
The Honorable André Birotte Jr., U.S. District Court Judge

---

## APPELLEES' MOTION TO STAY APPEAL PENDING BANKRUPTCY COURT APPROVAL OF SETTLEMENT

---

**WESTON & AGNESS LLP**
Aaron C. Agness, State Bar No. 221943
Leo L. Ashley III, State Bar No. 197890
1960 E. Grand Ave., Suite 400
El Segundo, California 90245
Telephone: (213) 596-8000
Facsimile: (213) 596-8039
Email:    aagness@westonagnesslaw.com
          lashley@westonagnesslaw.com

Attorneys for Third-Party Plaintiffs-Appellees

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Third-Party Plaintiffs and Appellees Travelers Property Casualty Company of America and Fidelity and Guaranty Insurance Underwriters, Inc. make the following corporate disclosures:

Travelers Property Casualty Company of America is 100% owned by The Phoenix Insurance Company, which is 100% owned by The Travelers Indemnity Company, which is 100% owned by Travelers Insurance Group Holdings, Inc., which is 100% owned by Travelers Property Casualty Corp., which is 100% owned by The Travelers Companies, Inc. The Travelers Companies, Inc. is the only publicly held company in the corporate family. No individual or corporation owns 10% or more of the stock of The Travelers Companies, Inc.

Fidelity and Guaranty Insurance Underwriters, Inc. is 100% owned by United States Fidelity and Guaranty Company, which is 100% owned by St. Paul Fire and Marine Insurance Company, which is 100% owned by The Travelers Companies, Inc. The Travelers Companies, Inc. is the only publicly held company in the corporate family. No individual or corporation owns 10% or more of the stock of The Travelers Companies, Inc.

///

Dated:  February 15, 2024

Respectfully submitted,
WESTON & AGNESS LLP

By:

_/s/ Aaron C. Agness_
Aaron C. Agness
Leo L. Ashley III
Attorneys for Third-Party Plaintiffs-Appellees
**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.**

## MOTION

Appellees Travelers Property Casualty Company of America and Fidelity and Guaranty Insurance Underwriters, Inc. (collectively "Travelers") respectfully move this Court for a stay of this appeal. This Motion is the result of a recently executed written settlement agreement between Travelers and the trustee of Appellant Drita Pasha Kessler's Chapter 7 bankruptcy estate that includes a dismissal of the instant appeal and is the subject of a motion for approval set for hearing in Bankruptcy Court on March 7, 2024. This appeal should be stayed because the settlement, if approved by the Bankruptcy Court, will resolve the parties' disputes and result in a dismissal of the instant appeal. Appellant Drita Pasha Kessler ("Kessler") has been notified of the instant Motion through her counsel, opposes it and intends to file an opposition.

The grounds for this Motion are as follows:

On December 29, 2022, Kessler filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code. *See* Declaration of Elissa D. Miller ("Miller Decl.") at ¶2. During the pendency of her bankruptcy case, Kessler filed a motion to vacate a default judgment against her issued by the United States District Court for the Central District of California in favor of Travelers ("Default Judgment"). *See id.* at ¶ 3.

On October 20, 2023, the United States District Court for the Central

District of California denied Appellant Kessler's motion to vacate the Default

Judgment. *See id.* On November 7, 2023, Kessler filed this instant appeal. *See id.*

While this instant appeal was pending, the United States Bankruptcy Court

for the Central District of California converted Kessler's bankruptcy case to one

under Chapter 7 on December 15, 2023, finding Kessler lacked reasonable

likelihood of rehabilitation and filed her bankruptcy petition in bad faith. *See id.* at

¶ 4, Ex. A. Following the conversion of Kessler's bankruptcy case, Mr. David

Seror was appointed as the trustee of the estate. *See id.* at ¶ 5, Ex. B.

The trustee and Travelers thereafter entered into a settlement agreement,

pending approval of the Bankruptcy Court. *See* Miller Decl. at ¶ 6, Exhibit C. The

settlement includes a mutual release of claims between Kessler and Travelers, as

well as a dismissal of this appeal by Kessler. *See id.* at ¶6, Ex. C. The trustee's

Motion to Approve Settlement With Travelers is set for hearing on March 7, 2024

in the United States Bankruptcy Court, Central District of California (San

Fernando Valley Division). *See id.* at ¶ 7, Ex. C.

Because this appeal will be rendered moot and dismissed by virtue of the

settlement if the Bankruptcy Court approves the same, the appeal should be stayed

pending that court's ruling on the trustee's motion to approve the settlement with

Travelers. See *In re FBI Distribution Corp.,* 267 B.R. 655, 656 (1ˢᵗ Cir. 2001)

(staying appeal pending bankruptcy court's determination as to approval of

settlement); Chris Goelz et al., Rutter Group Practice Guide: Federal Ninth Circuit Civil Appellate Practice, Ch. 6-B, §6:137 (The Rutter Group 2023) (appellate stays may be appropriate when parties are engaged in ongoing and productive settlement negotiations, resolution of a case in another tribunal may dispose of one or more issues on appeal or ongoing or imminent events outside the litigation may render the appeal moot).

In light of the foregoing, Travelers moves this Court to stay this appeal pending the Bankruptcy Court's approval of the settlement between Travelers and the trustee.

Dated:  February 15, 2024

Respectfully submitted,
WESTON & AGNESS LLP

By:  */s/ Aaron C. Agness*
Aaron C. Agness
Leo L. Ashley III
Attorneys for Third-Party Plaintiffs-Appellees
**TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA and FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC.**

## DECLARATION OF ELISSA D. MILLER

I, Elissa D. Miller, declare as follows:

1.     I am an attorney duly licensed to practice in the State of California and before this Court.  I am a member of Greenspoon Marder LLP, attorneys for David Seror, Chapter 7 trustee (the "Trustee") of the estate of Debtor Drita Pasha Kessler ("Kessler").  I submit this declaration in support of the Motion to Stay Pending Bankruptcy Court Approval of Settlement filed contemporaneously herewith. The following is true and correct of my personal knowledge, or upon information and belief, and if called as a witness, I could and would testify competently with respect thereto.

2.     On December 29, 2022, Kessler filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code, commencing Bankruptcy Case No. 1:22-bk-11504-VK (the "Bankruptcy Case.").

3.     Based on my review of documents and the docket of the Bankruptcy Case, I am aware that during the pendency of her Bankruptcy Case, prior to the appointment of the Trustee, Kessler filed a motion to vacate the default judgment against her issued by the United States District Court for the Central District of California, held by Travelers Property Casualty Company of America and Fidelity and Guaranty Insurance Underwriters, Inc. (collectively "Travelers"). On October

7

20, 2023, the District Court denied Kessler's motion. Kessler then filed this instant appeal on November 7, 2023.

4.      On December 15, 2023, the United States Bankruptcy Court for the Central District of California converted the Bankruptcy Case to one under Chapter 7. A true and correct copy of the Bankruptcy Court's December 15, 2023 order is attached hereto at **Exhibit A**.

5.      Following the conversion of Bankruptcy Case, December 18, 2023, David Seror was appointed as the Chapter 7 trustee and has been serving in that capacity since. A true and correct copy of the Notice appointing the Trustee is attached hereto as **Exhibit B**.

6.      Following his appointment, the Trustee entered into a tentative settlement agreement with Travelers, appellees in this case, subject to Bankruptcy Court Approval. Pursuant to the settlement, the Trustee and Travelers agreed on the allowed amount of and the reclassification of Travelers' claim and the dismissal of this appeal.

7.      On February 13, 2024, I filed the Motion in the Bankruptcy Court to Approve the Settlement with Travelers [Bankruptcy Court Dkt. No. 259.] and set it for hearing on March 7, 2024.   The Settlement Agreement between the Trustee and Travelers is attached to the Settlement Motion as Exhibit 1.   A true and correct copy of the Trustee's Motion for Approval is attached hereto as **Exhibit C**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 15th day of February 2024 at Los Angeles, California.

_____
Elissa D. Miller

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2024, I electronically filed the

foregoing with the Clerk of the Court for the United States Court of Appeals for

the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by

the appellate CM/ECF system.

Dated:  February 15, 2024

Respectfully submitted,
WESTON & AGNESS LLP


By:  */s/ Aaron C. Agness*
     Aaron C. Agness
     Leo L. Ashley III
     Attorneys for Third-Party Plaintiffs-
     Appellees
     **TRAVELERS PROPERTY
     CASUALTY COMPANY OF
     AMERICA and FIDELITY AND
     GUARANTY INSURANCE
     UNDERWRITERS, INC.**

EXHIBIT "A"

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                           **Hearing Room      301**

---

<u>1:30 PM</u>
**1:22-11504      Drita Pasha Kessler**                                                    **Chapter 11**

   **#5.00**     Travelers Property Casualty Company of America's Motion For An
                 Order Authorizing Converting Debtor's Case To Chapter 7

                            Docket        196

**Judge:**

        The Court will grant the motion.

**I.       BACKGROUND**

        *A.   Prepetition Litigation*

                *1.   City Art Litigation*

In 2007, Drita Pasha Kessler ("Debtor") and her business DK Art Publishing, Inc.
("DK Art") sued an entity called City Art. Declaration of David Morales (the "June
2023 Morales Declaration"), ¶ 7 [doc. 110]. City Art was insured by Travelers
Property Casualty Company of America ("Travelers"). Declaration of Sangyoon
Nathan Park, Esq. (the "March 5, 2023 Park Declaration"), ¶ 4 [doc. 44]. In 2013,
Debtor and DK Art prevailed against City Art, and Debtor was awarded
approximately $8.3 million in damages (the "City Art Judgment"). June 2023 Morales
Declaration, ¶ 7. Debtor's attorney in the City Art litigation was Franklin R. Fraley,
Jr., also known as Franklyn R. Fraley. June 2023 Morales Declaration, ¶ 7; March 5,
2023 Park Declaration, ¶ 4.

Pursuant to a legal services contract between Debtor and Mr. Fraley, Debtor granted
Mr. Fraley a lien on all proceeds from the City Art litigation in the amount of unpaid
fees and expenses. Debtor disputed the amount of Mr. Fraley's attorney's fees, and in
2013, Debtor terminated Mr. Fraley as counsel. *See Order Granting Defendants'
Motions for Summary Judgment and Motion for Entry of Default* (the "Default
Order"), contained in Proof of Claim No. 5-1 filed by Travelers, pp. 9-10. In early
December 2013, substitutions of counsel were filed. *Id.*, p. 10.

Sometime either prior to or after Debtor obtained the City Art Judgment, City Art

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                    **Hearing Room    301**

---

<u>1:30 PM</u>
**CONT...      Drita Pasha Kessler**                              **Chapter 11**

commenced a state court action against Travelers and others, seeking insurance coverage in relation to the City Art litigation (the "Coverage Suit"). *See id*.; *see also* Exh. 3 to the March 5, 2023 Park Declaration, pp. 1-2. On or about October 29, 2013, Mr. Fraley filed a notice of his attorney lien in the Coverage Suit. Default Order, p. 10; *see also* Exh. 3 to the March 5, 2023 Park Declaration, p. 2; June 2023 Morales Declaration, ¶ 7.

On February 2, 2015, the parties to the Coverage Suit entered into a settlement agreement, pursuant to which Travelers and other defendants paid $6,460,000 to Debtor via her new counsel (the "Settlement Agreement"). Exh. 3 to the March 5, 2023 Park Declaration; Default Order, p. 11.

### 2. *Fraley Litigation*

On January 29, 2018, Mr. Fraley commenced a lawsuit in the United States District Court against Travelers and others for his unpaid attorney's fees (the "Fraley Action"). Default Order, p. 13; March 5, 2023 Park Declaration, ¶¶ 3-4. Travelers filed a crossclaim against Debtor in the Fraley Action. March 5, 2023 Park Declaration, ¶ 4; June 2023 Morales Declaration, ¶ 17. Debtor did not respond to the crossclaim. March 5, 2023 Park Declaration, ¶ 5; Default Order, p. 9.

On October 2, 2018, Travelers caused Debtor's default to be entered. Default Order, p. 18; March 5, 2023 Park Declaration, ¶¶ 4-5. On June 24, 2019, the district court entered a default judgment against Debtor (the "Default Judgment"). Default Order, p. 19; March 5, 2023 Park Declaration, ¶ 4. On January 11, 2022, the district court entered an amended default judgment against Debtor in the amount of $3,877,966.39 (the "Amended Default Judgment"). Default Order, p. 22.

On September 22, 2023, Debtor filed a motion to vacate the Amended Default Judgment (the "Motion to Vacate"). *See* Declaration of David Morales, ¶ 6 and Exh. A thereto [doc. 166]. On October 20, 2023, the district court denied the Motion to Vacate. November 2023 Park Declaration, ¶ 4. *See also* Exh. A to the Request for Judicial Notice filed by the Subchapter V trustee (the "Trustee") [doc. 176].

### 3. *Travelers Litigation*

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                **Hearing Room      301**

---

<u>1:30 PM</u>
**CONT...      Drita Pasha Kessler**                                              **Chapter 11**

On November 14, 2022, Travelers filed a verified complaint (the "District Court Complaint") against Debtor, Debtor's children Colette Kessler, Semone Kessler and Kennedy Kessler, Debtor's sister Vitora Vukelj, Debtor's former priest Daniel Keohane and Belwood Group, LLC ("Belwood Group") in the United States District Court (the "Travelers Action"). Declaration of Sangyoon Nathan Park (the "March 30, 2023 Park Declaration"), ¶ 13 and Exh. 5 thereto [doc. 61]. In the District Court Complaint, Travelers alleges, among other things, that Debtor fraudulently conveyed more than $2 million in real estate and cash to her adult children and other parties. Exh. 5 to the March 30, 2023 Park Declaration.

Travelers represents that—

> The Travelers Action is related to the Fraley Action and the Amended Default Judgment. Debtor has sought to avoid enforcement of the Amended Default Judgment by engaging in numerous fraudulent transfers in concert with other defendants in the Travelers Action, involving, among other things, a sham trust, properties held by nominee(s) and transfer of funds outside of the country.

> Belwood Group is the nominal owner of real property located at 20362 Callon Drive, Topanga, CA (the "Callon Property"). Between July and August 2022, Debtor, through the trust, transferred funds, directly and indirectly, to Belwood Group for the purpose of purchasing the Callon Property. Belwood Group is a Wyoming limited liability company controlled by Debtor's son Kennedy Kessler.

Exh. 5 to the March 30, 2023 Park Declaration, ¶¶ 1-3, 9, 13, 62, 64, 78, 126 and 127 and Exhs. 1, 2, 31, 35 and 39 thereto.

As of October 31, 2022, a Citibank account in the name of Belwood Group had a balance of approximately $800,000. Exh. 6 to the Declaration of Sangyoon Nathan Park, Esq. (the "October 2023 Park Declaration") [doc. 159]. On December 6, 2022, Belwood Group transferred $700,000 out of the Citibank account. Exh. 1 to the Declaration of S. Nathan Park, Esq. ("November 2023 Park Declaration") [doc. 199].

### B. Debtor's Chapter 11 Case

---

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                          **Hearing Room          301**

---

<u>1:30 PM</u>
**CONT...          Drita Pasha Kessler**                                                   **Chapter 11**

On December 29, 2022, Debtor filed a chapter 11, subchapter V petition. At that time, Leonard Pena was Debtor's bankruptcy counsel. [**FN 1**] In her petition, Debtor stated that she resides at 6909 Texhoma Ave., Van Nuys, CA 91406 (the "Texhoma Property").

### 1. *Debtor's Assets*

#### a. *Real Estate*

In her schedule A/B [doc. 13], Debtor identified an "equitable interest" in the Texhoma Property and valued the Texhoma Property at $928,000. In her schedule C [doc. 13], Debtor claimed a $678,391.00 exemption in the Texhoma Property under California Code of Civil Procedure ("CCP") § 704.730. In her schedule D [doc. 13], Debtor did not identify any creditors which have claims secured by the Texhoma Property.

In addition, in her schedule A/B [doc. 13], Debtor identified a 20 percent "equitable interest" in 5 parcels of land located in Tuzi, Montenegro, valued at $50,000. Finally, in her schedule A/B [doc. 13], Debtor identified an "equitable interest" in a condominium in Tivat, Montenegro, valued at $50,000 (together with the land in Tuzi, Montenegro, the "Montenegro Properties"). [**FN 2**] In her schedule C [doc. 13], Debtor did not claim exemptions in either of the Montenegro Properties. In her schedule D [doc. 13], Debtor did not identify any creditors which have claims secured by the Montenegro Properties.

#### b. *Claims Against Third Parties*

In her schedule A/B [doc. 13], Debtor identified two claims against third parties: (1) a claim, which she valued at $1 million, against Jacque Wizman to quiet title for an ownership interest in a painting by Tamara De Lempicka; and (2) a claim, valued at $80,000, against Barry Peel for unpaid commissions allegedly owed to Debtor. In her schedule C, Debtor did not claim an exemption in these alleged claims against third parties [doc. 13].

#### c. *Inventory and Other Assets*

---

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

Thursday, December 14, 2023                                    **Hearing Room      301**

1:30 PM
**CONT...      Drita Pasha Kessler                                    Chapter 11**

In her schedule A/B [doc. 13], Debtor identified an interest in the following artwork
allegedly held for sale: (1) approximately 1,042 Tamara De Lempicka serigraphs,
valued at $1,563,000; and (2) 217 miscellaneous posters from various artists including
Tamara De Lempicka, valued at $10,000 (collectively, the "Inventory"). In her
schedule C, Debtor did not claim an exemption in the Inventory [doc. 13].

In her schedule A/B [doc. 13], Debtor identified an interest in a cashier's check in the
amount of $238,192.38 (the "Cashier's Check"). In her schedule C, Debtor did not
claim an exemption in the Cashier's Check [doc. 13].

### 2.   *Claims Against Debtor's Estate*

In her schedules D and E [doc. 13], Debtor indicated that she did not have any secured
or priority unsecured creditors. [**FN 3**] With respect to nonpriority unsecured
creditors, in her schedule F [doc. 13], Debtor identified claims totaling $4,183,235.39,
including a claim in the amount of $3,877,966.39 held by Travelers.

On March 6, 2023, Travelers filed proof of claim no. 5-1 against the estate, asserting a
secured claim, based on a recorded abstract of judgment, in the amount of
$3,913,755.25. [**FN 4**]

### 3.   *Debtor's Monthly Operating Reports*

Since filing her chapter 11 petition, Debtor has filed monthly operating reports (the
"MORs") for January through and including September 2023. *See* docs. 47, 67, 81,
115, 120, 136, 145, 177 and 178. [**FN 5**]. According to the January 2023 MOR,
Debtor received total cash receipts in the amount of $244,210.38. *See* January 2023
MOR, doc. 47, p. 2. On January 20, 2023, there was a deposit into Debtor's debtor-in-
possession account (ending in 1745) in the amount of $238,192.38. *Id.*, p. 11. At the
end of January 2023, Debtor's cash on hand was $243,095.59. *Id.*, p. 2. By the end of
September 2023, Debtor's cash on hand was $185,693.11. *See* September 2023 MOR,
doc. 178, p. 3.

### 4.   *Travelers' Objection to Debtor's Claim of a Homestead Exemption*

On March 2, 2023, Travelers filed an objection to Debtor's claim of a homestead

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

---

**Thursday, December 14, 2023**                                      **Hearing Room        301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                                    **Chapter 11**

exemption pursuant to, in part, 11 U.S.C. § 522(o) (the "Homestead Objection") [doc.
40]. The Court sustained the Homestead Objection and disallowed Debtor's
homestead exemption claim. *See* docs. 138 and 146.

The Court ruled, in relevant part—

> [F]ederal law, i.e., 11 U.S.C. § 522(o), controls the extent to which
> Debtor's claimed exemption may be reduced by an amount that is
> attributable to her conversion of nonexempt assets into exempt assets
> with the intent to hinder, delay or defraud a creditor….The testimonial
> and documentary evidence establishes, by a preponderance of the
> evidence, that, with the intent to hinder, delay or defraud a creditor,
> Debtor disposed of her nonexempt property within 10 years of the date
> on which she filed her chapter 11 petition in order to acquire her entire
> interest in the Texhoma Property.
> …
> Debtor has placed significant assets, i.e., real property and large sums
> of money, in the names of other people, namely, Fr. Keohane, her sister
> and her daughters. This pattern of behavior is indicative of a scheme
> and evidences Debtor's intent to hide her assets from a creditor.
> …
> Debtor's representation that she had no intent to defraud a creditor,
> because she thought all disputes were resolved after the Settlement
> Agreement was executed in 2015, is not credible. Documentary
> evidence from August 2021…indicates that Debtor wanted to "remit
> funds out of the countries [sic]," which indicates an intention to
> conceal assets and defraud a creditor, namely, Mr. Fraley.
> …
> It is apparent that Debtor's disposition of her nonexempt assets,
> namely, the funds deposited into the Citibank account and then
> withdrawn from that bank account, in order to purchase the Texhoma
> Property, was made with an intent to hinder, delay and defraud
> Debtor's creditors.

Doc. 138, pp. 22-23 and 25. Debtor has appealed the order sustaining the Homestead
Objection (the "Bankruptcy Appeal"). *See* doc. 148. The Bankruptcy Appeal is

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

---

**Thursday, December 14, 2023**                                        **Hearing Room      301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                             **Chapter 11**

pending in the United States District Court. *See* docs. 153 and 164.

     5.    ***Debtor's Chapter 11 Plan***

On March 29, 2023, Debtor filed a chapter 11, subchapter V plan (the "Plan") [doc. 57]. In the Plan, Debtor provided treatment for an unsecured claim of Travelers, if Travelers held an allowed claim. Under the Plan, Travelers would—

> [B]e paid its pro rata share of the Debtor's projected disposable income over a period of 5 years from art sales which the Debtor estimates to be 53% of their allowed claim over a period of 5 years following Plan confirmation.

Plan, p. 14.

In addition, Debtor stated that the Plan would be funded by, among other things, the "[p]ursuit of other estate claims and causes of action." *Id*., p. 18. In the liquidation analysis attached to the Plan, Debtor assigned a value of $250,000 for "[l]itigation claims against Wizman, Peel and Debtor's Children[.]" Exh. 1 to the Plan. As concerns potential avoidance actions or other causes of action, Debtor proposed that—

> All avoidance actions and strong-arm powers of a trustee under chapter 5 of [sic] Bankruptcy Code, shall irrevocably vest in [] Debtor and be transferred in total to the Reorganized Debtor upon confirmation of the Plan. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be the Plan Effective Date. The deadline for [] Debtor or Reorganized Debtor to file any non-avoidance action shall be the later of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date.

Plan, p. 19.

After the Court sustained the Homestead Objection, Travelers sent a letter to Debtor's counsel outlining the elements necessary for Travelers to consent to a chapter 11 plan. October 2023 Park Declaration, ¶ 7 and Exh. 1 attached thereto. According to Mr. Park—

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

**Thursday, December 14, 2023**                                    **Hearing Room      301**

1:30 PM
**CONT...      Drita Pasha Kessler**                                                **Chapter 11**

[T]he [P]lan is not adequate, because it did not include three major categories of Debtor property: (1) $678,391.00, or the value of Debtor's homestead exemption, which is now disallowed; (2) at least $2.2 million in fraudulently transferred assets in the form of cash and real estate, given to Debtor's adult children and other nominees, and; (3) value of Debtor's property in Montenegro, as well as any other property that the Debtor failed to disclose to date.

October 2023 Park Declaration, at ¶ 8 and Exh. 1 thereto.

The Court has set a deadline of March 1, 2024 for Debtor to confirm a chapter 11 plan (the "Plan Confirmation Deadline"). *See* doc. 171, p. 2. On November 17, 2023, Debtor filed a notice of withdrawal of the Plan [doc. 191]. As of December 7, 2023, Debtor has not filed another chapter 11 plan.

### 6.  *Debtor's Loss of Bankruptcy Counsel*

In October 2023, Mr. Pena filed a motion to withdraw as Debtor's bankruptcy counsel, which Debtor did not oppose, and the Court granted that motion. To take the place of Mr. Pena, Debtor filed an application to employ the Law Offices of Michael Jay Berger as bankruptcy counsel (the "Employment Application") [doc. 154]. Mr. Berger conditioned his employment as Debtor's bankruptcy counsel, including representing Debtor in pending adversary proceedings, on his immediate receipt of $50,000 from Debtor, as a postpetition retainer. Declaration of Michael Jay Berger, ¶ 10 [doc. 154].

The United States trustee (the "UST") filed an objection to the Employment Application (the "Objection to Application") [doc. 170], asserting that Debtor's payment of such a postpetition retainer was inappropriate, because, among other things, as reflected by the MORs, Debtor's postpetition monthly income consistently has been less than her postpetition monthly expenditures.

Travelers and the Trustee also opposed the Employment Application. *See* docs. 168 and 169. On November 3, 2023, the Court entered an order denying the Employment Application [doc. 182].

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                    **Hearing Room    301**

---

<u>1:30 PM</u>
**CONT...**        **Drita Pasha Kessler**                                    **Chapter 11**

### 7.  *Order to Show Cause*

On October 19, 2023, the Court issued an order to show cause why this case should
not be dismissed or converted to one under chapter 7 pursuant to 11 U.S.C. §§ 105(a)
and 1112(b)(1) and (b)(4)(e) for cause (the "OSC") [doc. 171], including Debtor's
non-compliance with: (1) an order requiring that Debtor file a copy of her 2022
Federal income tax return (or transcript of the same) (the "Order Setting Status
Conference") [doc. 15]; and (2) an order requiring that Debtor file a status report
discussing her postpetition income and projections regarding future income (the
"Order Continuing Status Conference") [doc. 143].

In response to the OSC, Debtor filed a copy of her 2022 Federal income tax return
[doc. 179] and her declaration (the "Kessler OSC Declaration") [doc. 180]. The
Kessler OSC Declaration included a postpetition profit and loss statement (the "Profit
and Loss Statement") and projections for November 2023 through December 2024.
Exh. 1 to Kessler OSC Declaration.  As set forth in the Profit and Loss Statement, for
the period of January through October 2023, Debtor had negative net income of
$33,830.56. *Id*.  Nevertheless, by filing a copy of her 2022 Federal income tax return
and the Kessler OSC Declaration, Debtor had come into compliance with the Order
Setting Status Conference and the Order Continuing Status Conference.
Consequently, the Court discharged the OSC.

### 8.  *Administrative Expenses Incurred in this Case*

The UST has represented that, as of September 30, 2023, the Trustee's outstanding
administrative fees and costs are approximately $45,865.  Declaration of Alfred
Cooper III (the "Cooper Declaration"), ¶ 5 [doc. 170].  In addition, Debtor has stated
that her former bankruptcy counsel, Mr. Pena, has asserted that, for his postpetition
services, he is owed fees in the amount of $150,000, which amount is after the
application of Mr. Pena's $35,000 prepetition retainer.  Declaration of Drita Kessler
(the "November 2023 Kessler Declaration"), ¶ 5 [doc. 213].

### 9.  *The Motion*

On November 21, 2023, Travelers filed a *Motion for an Order Authorizing
Converting Debtor's Case to Chapter 7* (the "Motion") [doc. 196], to which the
Trustee filed a joinder (the "Joinder") [doc. 216]. In the Motion, Travelers asserts that

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

---

**Thursday, December 14, 2023**                                   **Hearing Room    301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                          **Chapter 11**

there is cause to convert this case to one under chapter 7 under 11 U.S.C. § 1112(b) because: (1) of Debtor's lack of good faith in filing the petition and prosecuting the case; and (2) Debtor cannot present a confirmable plan of reorganization. In support of the Motion, Travelers filed the Declaration of S. Nathan Park, Esq. (the "November 2023 Park Declaration") [199]. In his declaration, Mr. Park stated that—

> [O]ne of Debtor's children, Kennedy Kessler, made an incomplete document production of Belwood Group LLC's bank account statements. The document production showed that on December 6— approximately three weeks after Travelers filed the [Travelers] Action, and three weeks before [] Debtor filed this bankruptcy, Belwood Group transferred $700,000.00 out of its account, presumably to yet another vehicle controlled by [] Debtor.

November 2023 Park Declaration, ¶ 5 and Exh. 1 thereto. With respect to a confirmable plan, Mr. Park asserts that "Debtor has been entirely unwilling to engage with Travelers to obtain its consent [for a consensual plan]." November 2023 Park Declaration, ¶ 6.

Debtor filed an opposition to the Motion (the "Opposition") [doc. 213] and, in support of the Opposition, the November 2023 Kessler Declaration. In the Opposition, Debtor asserts that the Motion is an inappropriate request for rehearing. [**FN 6**] Debtor also contends that she will be able to propose a feasible plan within three months, because Travelers is owed only $219,000.

In her declaration, Debtor states:

> It is not true that there is $800,000 missing from my Chapter 11. This money went into the DIP account ($300,000) and to purchase art for resale to run my business ($400,000). The remaining $100,000 went to my son to use for maintenance of one parcel of real estate at the Callon [P]roperty.

November 2023 Kessler Declaration, ¶ 8.

Regarding the Belwood Account Funds, Debtor also has represented:

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                    **Hearing Room        301**

---

<u>1:30 PM</u>
**CONT...**      **Drita Pasha Kessler**                                                          **Chapter 11**

> This money came from a trust established over 20 years ago by my
> mother. At first the beneficiaries were me and my siblings. In 2017 my
> mother changed the Trust beneficiaries to my children. It was this
> money, the beneficial interests from the Trust which went to buy the
> Callon property and the money my kids got as well as part of the
> money used to put in [sic] DIP account. The Callon property was
> bought in the name of my son, so this purchase/transfer exactly carried
> out the intent my mother had expressed in the trust.

Declaration of Drita Pasha Kessler (the "December 2023 Kessler Declaration"), ¶ 10
[doc. 218].

On December 4, 2023, Debtor filed a response to the Trustee's Joinder (the
"Response") [doc. 218], requesting that she be allowed to remain in a chapter 11
bankruptcy case until her appeals are resolved. In the Response, among other things,
Debtor presents several arguments as to why the district court's denial of the Motion
to Vacate will be overturned on appeal. *See* Response, pp. 2-6. On December 6, 2023,
Travelers filed a reply [doc. 221].

## II.      LEGAL AUTHORITY

11 U.S.C. § 1112(b) provides in pertinent part—

> (1) Except as provided in paragraph (2) and subsection (c), on request
> of a party in interest, and after notice and a hearing, the court shall
> convert a case under this chapter to a case under chapter 7 or
> dismiss a case under this chapter, whichever is in the best interests
> of creditors and the estate, for cause unless the court determines
> that the appointment under section 1104(a) of a trustee or an
> examiner is in the best interests of creditors and the estate.

> (2) The court may not convert a case under this chapter to a case under
> chapter 7 or dismiss a case under this chapter if the court finds and
> specifically identifies unusual circumstances establishing that
> converting or dismissing the case is not in the best interests of

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Victoria Kaufman, Presiding
Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                    **Hearing Room        301**

---

<u>1:30 PM</u>
**CONT...**      **Drita Pasha Kessler**                              **Chapter 11**

> creditors and the estate, and the debtor or any other party in interest
> establishes that—
>
> > (A) there is a reasonable likelihood that a plan will be
> > confirmed…within a reasonable period of time; and
> >
> > (B) the grounds for converting or dismissing the case include an
> > act or omission of the debtor other than under paragraph
> > 4(A)—
> >
> > > (i) for which there exists a reasonable justification for
> > > the act or omission; and
> > >
> > > (ii) that will be cured within a reasonable period of time
> > > fixed by the court.
> >
> > …
> > (4) For purposes of this subsection, the term 'cause' includes—
> >
> > > (A) Substantial or continuing loss to or diminution of the estate
> > > and the absence of a reasonable likelihood of
> > > rehabilitation[.]

Motions to dismiss or convert under 11 U.S.C. § 1112(b) require a two-step analysis.
"In its application of § 1112(b), a bankruptcy court must first determine whether
'cause,' as articulated by the statute, exists to change the manner in which the Chapter
11 case is proceeding." *In re Marciano*, 459 B.R. 27, 48 (9th Cir. BAP 2011) (citing
*In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994)).

> Only after finding "cause" does a bankruptcy court reach the issue of
> what to do with the case. Section 1112(b) offers the choices of
> conversion to Chapter 7, dismissal, or even the appointment of a
> trustee or an examiner. In making its choice, the bankruptcy court is
> directed to evaluate which alternative is in the "best interests of the
> creditors and the estate."

*Id*.; *see also In re Nelson*, 343 B.R. 671, 675 (9th Cir. BAP 2006) ("First, it must be

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

---

**Thursday, December 14, 2023**                                    **Hearing Room      301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                                    **Chapter 11**

determined that there is 'cause' to act. Second, once a determination of 'cause' has been made, a choice must be made between conversion and dismissal based on the 'best interests of the creditors and the estate.'").

"'Cause' is defined in § 1112(b)(4), but the list contained in § 1112(b)(4) is illustrative, not exhaustive." *In re Mense*, 509 B.R. 269, 277 (Bankr. C.D. Cal. 2014) (citing *In re Albany Partners, Ltd.*, 749 F.2d 670, 674 (11th Cir. 1984)). "Although section 1112(b) does not explicitly require that cases be filed in good faith, courts have overwhelmingly held that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994).

"[T]he party seeking relief under Section 1112(b)(1) has the initial burden of persuasion to establish that cause exists for granting such relief." *In re Baroni*, 36 F.4th 958, 966 (9th Cir. 2022); *see also In re Sullivan*, 522 B.R. 604, 614 (9th Cir. BAP 2014) ("The movant bears the burden of establishing by a preponderance of the evidence that cause exists."). Once the movant has established cause, the burden shifts to the party opposing conversion under section 1112(b)(2). *In re Labankoff*, 2010 WL 6259969, at *3 (9th Cir. BAP June 4, 2010).

The bankruptcy court has discretion to dismiss or convert a chapter 11 case pursuant to 11 U.S.C. § 1112(b). *See In re Consolidated Pioneer Mortg. Entities*, 264 F.3d 803, 806 (9th Cir. 2001) ("The decision to convert the [chapter 11] case to Chapter 7 is within the bankruptcy court's discretion."); *and In re Silberkraus*, 253 B.R. 890, 903 (Bankr. C.D. Cal. 2000) ("A bankruptcy court has broad discretion to convert or dismiss a chapter 11 petition for 'cause' under 11 U.S.C. § 1112(b).").

> ### A. *Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation*

"To satisfy the first prong, a movant may demonstrate that the debtor continues to incur losses or maintains a negative cash-flow position after the entry of the order for relief or that the debtor's assets have declined in value since the case was commenced." *In re Creekside Sr. Apartments, L.P.*, 489 B.R. 51, 61 (6th Cir. BAP 2013); *see also In re USA Commercial Mortg. Co.*, 452 Fed.Appx. 715, 724 (9th Cir. 2011) (citing *Loop Corp. v. U.S. Trustee*, 379 F.3d 511, 515–16 (8th Cir. 2004) ("[A] negative cash flow situation alone is sufficient to establish continuing loss to or

## United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                    **Hearing Room     301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                              **Chapter 11**

diminution of the estate."). "[T]here need not be a significant diminution in the estate
to satisfy Section 1112(b)[1]." *Mense*, 509 B.R. at 284. "All that need[s] to be found is
that the estate has suffered some diminution in value." *Id*.

"To satisfy the second prong of § 1112(b)(4)(A), a movant must demonstrate that the
debtor does not have a reasonable likelihood of rehabilitation." *Creekside*, 489 B.R. at
61; *see also In re Orange Cnty. Bail Bonds, Inc.*, 638 B.R. 137, 150 (9th Cir. BAP
2022). "In almost every case, the debtor's prospects will depend on whether the debtor
has formulated, or can formulate within a reasonable amount of time, a reasonably
detailed business plan." *Orange Cnty. Bail Bonds*, 638 B.R. at 150. The inability to
propose and confirm a plan constitutes "cause" under section 1112(b). *In re McClure*,
2022 WL 1666952, at *1 (Bankr. C.D. Cal. May 24, 2022).

### B. Lack of Good Faith

"Because good faith is required in the commencement and prosecution of a chapter 11
case, the lack thereof constitutes cause for dismissal under § 1112(b)(1)." *Sullivan*,
522 B.R. at 614. "Whether the good faith requirement has been satisfied is a fact
intensive inquiry in which the court must examine the totality of facts and
circumstances and determine where a petition falls along the spectrum ranging from
the clearly acceptable to the patently abusive." *In re Integrated Telecom Express, Inc.*,
384 F.3d 108, 118 (3d Cir. 2004); *see also Silberkraus*, 253 B.R. at 902 ("Findings of
lack of good faith in proceedings depends on the totality of the facts and
circumstances surrounding the particular case[.]"). "A petition filed in bad faith may
manifest an intent to cause hardship or to delay creditors by resort to the Chapter 11
device merely for the purpose of invoking the automatic stay, without an intent or
ability to reorganize his financial activities." *In re Thirtieth Place, Inc.*, 30 B.R. 503,
505 (9th Cir. BAP 1983).

> All the facts and circumstances leading up to the filing of the case, and
> the conduct of the Debtor during the case, can properly be considered
> by the Court in determining whether the chapter 11 case was subject to
> dismissal or conversion "for cause" for bad faith/lack of the "good
> faith" by the debtor that is required pursuant to 11 U.S.C. § 1129(a)(3)
> for the court to be able to confirm a chapter 11 plan.

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                          **Hearing Room    301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                                              **Chapter 11**
*Silberkraus*, 253 B.R. at 902.

"If the motion is predicated on bad faith, the moving party has the initial burden of
making a *prima facie* case to support its allegations of bad faith." *Mense*, 509 B.R. at
277. "Once such a showing has been made, the burden shifts to the debtor to establish
that its chapter 11 case was filed in good faith." *Id*. (citing *Integrated Telecom
Express, Inc.*, 384 F.3d at 118).

### C.  Best Interests of the Creditors and the Estate

"Before the bankruptcy court can grant conversion, it must consider whether this
relief, as opposed to some other remedy, is in best interests of the creditors and the
estate." *Baroni*, 36 F.4th at 968 (citing 11 U.S.C. § 1112(b)(1)). "And when raised, it
must also consider whether there are unusual circumstances that indicate that the
creditors' and the estate's interests are best served by not granting relief under Section
1112(b) and allowing the Chapter 11 proceeding to continue." *Id*. (citing 11 U.S.C. §
1112(b)(2)).

## III.     ANALYSIS

### A.  Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation

Here, there is cause to dismiss or convert this case under section 1112(b)(4)(A).
Regarding the first prong, Travelers has met its burden of showing a substantial or
continuing loss to or diminution of the estate.

Between January and October 2023, Debtor reported that her cash flow was negative
$33,830.56. *See* Exh 1 to the Kessler OSC Declaration. Debtor's MORs have
consistently shown a negative cash flow, with total disbursements exceeding total
receipts. *See* docs. 81, 115, 120, 136, 177, 178. Consequently, Debtor's cash on hand
has decreased from $243,095.59 to $185,693.11. *See* docs. 47, 67, 81, 115, 120, 136,
145, 177, 178. Together, the Kessler OSC Declaration and the MORs show an overall
negative cash flow and establish a substantial or continuing loss to the estate.

As to the second prong, the record demonstrates the absence of a reasonable

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                    **Hearing Room        301**

---

<u>1:30 PM</u>
**CONT...        Drita Pasha Kessler**                                                    **Chapter 11**

likelihood of rehabilitation. Debtor has withdrawn the Plan filed in March 2023,
which depended on Travelers' allowed claim being substantially reduced. Debtor has
not filed a new chapter 11 plan. Except with respect to preference litigation which
Debtor commenced against Travelers, Debtor has not explained her intentions, if any,
to file avoidance actions, as noted in the Plan. Moreover, in the event that the District
Court's decision to deny the Motion to Vacate is upheld on appeal, Debtor has not
addressed the treatment of Travelers' claim under a chapter 11 plan.

Finally, although Debtor is engaged in a business, as discussed above, the MORs
reflect that she has insufficient cash available to pay accrued administrative expenses
and insufficient net income to fund payments under a chapter 11 plan. Consequently,
under section 1112(b)(4)(A), there is cause to dismiss or convert this case.

### B.  Lack of Good Faith

Travelers also has met its burden of demonstrating there is cause to dismiss or convert
this case under section 1112(b) based on Debtor's lack of good faith. First, in
connection with the Homestead Objection, the Court held that Debtor engaged in a
scheme to conceal assets and defraud her creditors. *See* doc. 138, p. 25.

In addition, Travelers has alleged that Debtor concealed more than $800,000 in cash
held in the name of Belwood Group, an entity which Debtor did not disclose in her
schedules. *See* Exh. 5 to the March 30, 2023 Park Declaration; October 2023 Park
Declaration, ¶ 27 and Exh. 6 thereto. On December 6, 2022, approximately three
weeks after the Travelers Action was filed, and three weeks before Debtor filed her
chapter 11 petition, $700,000 was transferred out of Belwood Group's bank account.
Exh. 1 to the November 2023 Park Declaration.

As concerns this cash which was held in Belwood's bank account (the "Belwood
Account Funds"), Debtor's explanation of the $700,000 held and then disbursed from
that account, a few weeks after Travelers filed the District Court Complaint, supports
the existence of her scheme to hinder, delay or defraud her creditors.  Debtor states
that: "[t]his money went into the DIP account ($300,000) and to purchase art for
resale to run my business ($400,000). The remaining $100,000 went to my son to use
for maintenance of one parcel of real estate at the Callon [P]roperty." November 2023
Kessler Declaration, ¶ 8. [**FN 7**].

---

**United States Bankruptcy Court**
**Central District of California**
San Fernando Valley
Victoria Kaufman, Presiding
Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                    **Hearing Room      301**

---

<u>1:30 PM</u>
**CONT...**      **Drita Pasha Kessler**                                           **Chapter 11**

Debtor represents that the money used to purchase the Callon Property "came from a trust established over 20 years ago by my mother" and that "[a]t first the beneficiaries were me and my siblings. In 2017 my mother changed the Trust beneficiaries to my children." December 2023 Kessler Declaration, ¶ 10. However, Debtor has not provided documentary evidence of her mother's establishment of a relevant trust, funded by Debtor's mother, over 20 years ago.  Taking into account the amount of funds which Debtor received from Travelers via the Settlement Agreement, Debtor's explanation as to the origin of the money held in the Belwood Account and used to purchase the Callon Property is not credible.

With respect to Debtor's alleged purchase of art using the Belwood Account Funds, Debtor does not describe the art which she allegedly purchased for $400,000 or explain why she purchased that art shortly before filing her chapter 11 petition. In addition, Debtor does not identify who received payment for the art, and Debtor has not produced the invoices or receipts.

By filing this case in late December 2022, Debtor delayed prosecution of Travelers' action to recover fraudulent transfers from her family members and other nominees. Moreover, she has not confirmed a chapter 11 plan; rather, Debtor's goal appears to be keeping her assets away from Travelers and her other creditors.  Considering the totality of facts and circumstances, under section 1112(b), there is cause to dismiss or convert this case for Debtor's lack of good faith.

### C. *Best Interests of the Creditors and the Estate*

As to whether conversion or dismissal is appropriate, conversion to chapter 7 is in the best interests of the creditors and the estate. Based on Debtor's schedules and the Court's disallowance of Debtor's homestead exemption claim, there are significant nonexempt assets in the estate, i.e., the Texhoma Property, the Montenegro Properties, claims against third parties and the Inventory.

In addition, if this case is converted to one under chapter 7, a chapter 7 trustee could pursue avoidance actions against insiders, including Debtor's family members. Between liquidating Debtor's nonexempt assets and prosecuting avoidance actions against insiders, a chapter 7 trustee may generate sufficient funds to make a significant

# United States Bankruptcy Court
## Central District of California
### San Fernando Valley
### Victoria Kaufman, Presiding
### Courtroom 301 Calendar

---

**Thursday, December 14, 2023**                                    **Hearing Room        301**

---

1:30 PM
**CONT...        Drita Pasha Kessler**                                                    **Chapter 11**

distribution to Travelers and other creditors. Consequently, the Court will convert this
case to one under chapter 7.

**IV.    CONCLUSION**

The Court will grant the Motion.

Movant must submit the order within seven (7) days.

### FOOTNOTES

FN 1:    In the application to employ Mr. Pena as Debtor's bankruptcy counsel, Debtor
asserted that she "filed her bankruptcy case in order to stay the litigation"
through which Travelers was seeking to collect on the Amended Default
Judgment, such as the Travelers Action. *See* application to employ Leonard
Pena as bankruptcy counsel, p. 3 [doc. 18].

FN 2:    In her schedule A/B, Debtor did not disclose any interest in the Callon
Property, which Travelers has alleged was purchased with Debtor's funds
[doc. 13]. *See* Exh. 5 to the March 30, 2023 Park Declaration, ¶¶ 13, 78,
82-85, 126, 127, 147.

FN 3:    The Internal Revenue Service filed proof of claim no. 4-1 against the estate,
asserting a secured claim in the amount of $24,457.45 and an unsecured
nonpriority claim in the amount of $2,473.09. In addition, the State of
California Franchise Tax Board filed proof of claim no. 6-1 against the estate,
asserting a secured claim in the amount of $20,569.71 and an unsecured
nonpriority claim in the amount of $31,211.09.

FN 4:    Travelers' claim based on the Amended Default Judgment represents more
than 95% of the claims made against Debtor's estate. *See* Claims Register for
bankruptcy case no. 1:22-bk-11504-VK; Motion, p. 6.

FN 5:    As of December 13, 2023, Debtor has not filed the October 2023 MOR.

FN 6:    Debtor may be referring to the OSC, which, as noted above, specifically

**United States Bankruptcy Court**
**Central District of California**
**San Fernando Valley**
**Victoria Kaufman, Presiding**
**Courtroom 301 Calendar**

**Thursday, December 14, 2023**                                 **Hearing Room**      **301**

<u>1:30 PM</u>
**CONT...**      **Drita Pasha Kessler**                                                **Chapter 11**

referenced section 1112(b)(4)(e) and Debtor's failure to comply with the Order
Setting Status Conference and the Order Continuing Status Conference. *See*
doc. 171. Here, Travelers does not seek relief under section 1112(b)(4)(e).

FN 7:    Although Debtor states that she transferred $300,000 into her debtor-in-
possession account from these funds, the Cashier's Check (disclosed in
Debtor's schedule A/B), which was deposited into the debtor-in-possession
account ending in 1745, was for approximately $238,000. *See* docs. 13 and 47.

| Party Information |
|---|

**<u>Debtor(s):</u>**

Drita Pasha Kessler                          Represented By
                                             Leonard  Pena
                                             Michael Jay Berger
                                             Andrew Edward Smyth

**<u>Trustee(s):</u>**

Robert Paul Goe (TR)                         Pro Se

EXHIBIT "B"

1    **PETER C. ANDERSON**
  **UNITED STATES TRUSTEE**
2    Eryk R. Escobar, Bar No. 281904
  Assistant United States Trustee
3    915 Wilshire Boulevard, Suite 1850
  Los Angeles, California 90017
4    Telephone: (213) 894-3240
  Facsimile: (213) 894-0276
5

6

7

8                **UNITED STATES BANKRUPTCY COURT**

9                **CENTRAL DISTRICT OF CALIFORNIA**

10               **SAN FERNANDO VALLEY DIVISION**

11    In re:                            Case Number: 1:22-bk-11504-VK

12    Drita Pasha Kessler,             Chapter 7

13                   Debtor(s)    **NOTICE OF APPOINTMENT OF**
14                                **TRUSTEE AND FIXING OF BOND;**
                              **ACCEPTANCE OF APPOINTMENT AS**
15                                **INTERIM TRUSTEE**

16

17        Pursuant to 11 U.S.C. § 701 and 11 U.S.C. § 322:

18             David Seror
19             21650 Oxnard Street, Suite 500
           Woodland Hills, California 91367
20

21  is appointed Interim Trustee in the above captioned matter and is hereby designated to preside at the

22  meeting of creditors.  This case is covered by the chapter 7 blanket bond on file with the Court on

23  behalf of the Trustees listed on Schedule A of the bond and any amendments or modifications

24  thereto.

25  DATED: December 15, 2023

26                                 Eryk R. Escobar, Assistant U.S. Trustee
27                                 on behalf of the U.S. Trustee

28

1       I, the undersigned, affirm that to the best of my knowledge and belief, I am disinterested within

2   the meaning of 11 U.S.C. § 101(14) and on this basis, I hereby accept my appointment as Interim

3   Trustee in the matter of *In Re:  Drita Pasha Kessler, Case No.: 1:22-bk-11504-VK.*  I will immediately

4   notify the United States Trustee if I become aware of any facts to the contrary.

5   DATED: December 18, 2023

6                              David Seror

7                              Interim Trustee

2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**21650 Oxnard Street, Suite 500, Woodland Hills, CA 91367.**

A true and correct copy of the foregoing document entitled: **NOTICE OF APPOINTMENT OF TRUSTEE AND FIXING BOND; ACCEPTANCE OF APPOINTMENT AS INTERIM TRUSTEE** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) **DECEMBER 18, 2023**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael Jay Berger**    michael.berger@bankruptcypower.com, yathida.nipha@bankruptcypower.com; michael.berger@ecf.inforuptcy.com
- **Shraddha Bharatia**    notices@becket-lee.com
- **Andre Boniadi**    aboniadi@bzlegal.com
- **Katherine Bunker**    kate.bunker@usdoj.gov
- **David Keith Gottlieb (TR)**    dkgtrustee@dkgallc.com, dgottlieb@iq7technology.com,
- rjohnson@dkgallc.com,akuras@dkgallc.com; ecf.alert+Gottlieb@titlexi.com
- **David C Nealy**    David.Nealy@limnexus.com, mimi.cho@limnexus.com,griselda.luna@limnexus.com
- **Leonard Pena**    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com
- **Brett Ramsaur**    brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com
- **Andrew Edward Smyth**    office@smythlo.com
- **James E Till**    james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com
- **United States Trustee (SV)**    ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**: On _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| December 18, 2023 | CRYSTAL SALAZAR | /s/ Crystal Salazar |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                              **F 9013-3.1.PROOF.SERVICE**

EXHIBIT "C"

1    Elissa D. Miller (CA Bar No. 120029)
       elissa.miller@gmlaw.com
2    **Greenspoon Marder LLP**
     1875 Century Park East, Suite 1900
3    Los Angeles, California  90067
     Telephone: 213.626.2311
4    Facsimile: 954.771.9264

5    Attorneys for David Seror, Chapter 7 Trustee

6

7                **UNITED STATES BANKRUPTCY COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9                **SAN FERNANDO VALLEY DIVISION**

10   In re                              Case No. 1:22-bk-11504-VK

11   Drita Pasha Kessler                Chapter 7

12            Debtor.                    **CHAPTER 7 TRUSTEE'S MOTION TO
                                         APPROVE SETTLEMENT WITH**
13                                       **TRAVELERS PROPERTY CASUALTY
                                         COMPANY OF AMERICA;**
14                                       **MEMORANDUM OF POINTS AND
                                         AUTHORITIES AND DECLARATION OF**
15                                       **DAVID SEROR IN SUPPORT THEREOF**

16                                       **Fed. R. Bankr. P. 9019(a) and Loc.
                                         Bankr. R. 9013-1(o)**
17
                                         Date:     March 7, 2024
18                                       Time:     1:30 p.m.
                                         Place:    Courtroom 301
19                                                 21041 Burbank Blvd.
                                                   Woodland Hills, CA 91367
20

21

22

23   **TO THE HONORABLE VICTORIA KAUFMAN, UNITED STATES BANKRUPTCY**

24   **JUDGE, AND TO ALL PARTIES IN INTEREST:**

25          **PLEASE TAKE NOTICE** that on March 7, 2024 at 1:30 p.m. or as soon thereafter

26   as this matter may be heard in the above entitled Court, David Seror, the duly appointed,

27   qualified, and acting chapter 7 trustee ("Applicant" or Trustee) for the estate of the

28   above-captioned debtor, Drita Pasha Kessler (the "Debtor"), will and hereby does move

1   this Court for an order approving a Settlement Agreement entered by and between the

2   Trustee and Travelers Property Casualty Company of America ("Travelers") pursuant to

3   which the parties resolve disputes and classification of Travelers claim in this estate

4   which settlement sets the amount of the claim, classifies it as unsecured and includes

5   dismissal of the Debtor's appeal of the Travelers' claim filed prior to the appointment of

6   the Trustee.  The Settlement also includes mutual releases.

7        This Motion is brought in accordance with Federal Rule of Bankruptcy Procedure

8   9019(a) and Local Bankruptcy Rule 9013-1(o)(1), and is made on the ground that Trustee

9   has determined that it is in the best interests of the bankruptcy Estate to settle this matter

10  on the terms set forth in the following Motion and in the Settlement Agreement.

11  Accordingly, the Trustee submits that the settlement is fair and equitable and in his best

12  business judgment.

13       This Motion is based on the attached memorandum of points and authorities, the

14  declaration of David Seror in support thereof and the exhibits attached hereto.

15       **WHEREFORE**, the Trustee respectfully requests that the Court enter an order:

16       1.    Granting the Motion;

17       2.    Approving the settlement with Travelers;

18       3.    Authorizing the Trustee to take such other and further action as may be

19  necessary by the terms of the Agreement; and

20       4.    Granting such other relief as the Court deems just and proper.

21  DATED: February 12, 2024            Respectfully Submitted,

22                                      **GREENSPOON MARDER LLP**

23

24

25                                      By: /s/ *Elissa D. Miller*_____
                                           Elissa D. Miller
26                                         Attorneys for David Seror Chapter 7 Trustee

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

**OF MOTION TO SETTLE WITH TRAVELERS**

**I.**

**PREFATORY STATEMENT**

This Motion seeks approval of a settlement by and between the Trustee and Travelers of disputes with regard to the amount and characterization of Proof of Claim 5-1 (the "Claim") filed by Travelers as a secured claim.  As a result of the settlement, Travelers will be allowed an unsecured claim in the reduced amount of $3 million, the parties will execute mutual releases and the appeal currently pending, filed by Debtor prior to the conversion of this case, will be dismissed.

As will be set forth in detail herein, the Trustee submits that the Settlement is fair, equitable and in his best business judgment and should be approved.

**II.**

**PERTINENT FACTS**

The facts, as set forth in the attached Declaration of David Seror (the "Seror Decl."), are as follows:

**A.    The Bankruptcy Case**

On December 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Subchapter V of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Case").  The case was converted to one under Chapter 7 on December 15, 2023, and David Seror was appointed to serve as chapter 7 trustee in this case and has been serving in that capacity since.

Based on the Trustee's investigation and his review of the Debtor's Schedules and Statement of Financial Affairs, his discussion with Debtor's counsel and counsel for creditors and counsel for the Debtor's children, the Trustee determined that prepetition, the Debtor was in the art business.  He also learned that prepetition, the Debtor had been involved in contentious litigation with another art dealer and then with Travelers.  While the litigation with Travelers was pending, the Debtor had transferred and/or caused to be

1    transferred two unencumbered homes, one in Van Nuys, CA and one in Topanga

2    Canyon, CA (along with the vacant land adjacent to this property).  The Trustee has also

3    been advised that there may have been other transfers of personal property as well as

4    claims against third parties.

5        **B.**    **The Debtor's Litigation With Travelers Giving Rise To The Claim**

6        With regard to the Debtor's litigation with Travelers, the Trustee learned that prior

7    to 2018, Travelers had provided coverage to City Art, Inc., which was a defendant in

8    litigation commenced by the Debtor.  After the Debtor prevailed in that litigation, and

9    before payment of the Judgment, the Debtor fired her attorney, Franklin R. Fraley, Jr.,

10   dba Fraley & Associates ("Fraley") and entered into a settlement agreement with

11   Travelers.  Pursuant to the settlement agreement, Travelers paid the Debtor

12   approximately $6.46 million and in exchange, the Debtor agreed to indemnify Travelers in

13   the event that Fraley sought payment from Travelers.

14       Subsequent thereto, Fraley commenced and prevailed in an arbitration against the

15   Debtor for the payment of its fees, which award was confirmed by the Los Angeles

16   Superior Court on July 9, 2018.  On January 29, 2018, after the issuance of the

17   arbitration award, Fraley commenced an action against Travelers and others in the

18   United States District Court, Central District of California, Case No. 2:18-cv-00722-AB-

19   JPR (the "2018 Case") for the balance due on its arbitration award due to Travelers'

20   failure to recognize Fraley's attorney's lien.

21       In the 2018 Case, Travelers filed a third-party claim against the Debtor pursuant to

22   the aforementioned indemnity provision in its settlement agreement.  The Debtor did not

23   appear or respond to the 2018 Case and default judgment was entered in favor of

24   Travelers and against the Debtor.  While the 2018 Case was pending, on August 31,

25   2021, Travelers and Fraley settled their dispute and Travelers paid Fraley $3,561,541.47.

26   Thereafter, on January 11, 2022, the District Court in the 2018 Case, issued an Amended

27   Default Judgment (the "Judgment") in favor of Travelers and against the Debtor in the

28

1   amount of $3,877,966.39 plus applicable interest.  A copy of the Judgment is attached to

2   the Declaration of David Seror as **Exhibit 2.**

3         The Debtor moved in the District Court to set aside the Judgment, which Motion

4   was denied on October 20, 2023. The Debtor appealed the ruling, which appeal is

5   currently pending in the Ninth Circuit Court of Appeals as case No. 23-3410.

6         On March 9, 2023, Travelers filed the Claim as a secured claim in the amount of

7   $3,913,765.25 based on the Judgment and its recordation of an abstract of judgment.

8                                               **III.**

9                                   **THE SETTLEMENT**

10        Attached to the Seror Decl. as **Exhibit 1** is a true and correct copy of the

11  Settlement Agreement between the Trustee and Travelers (the "Agreement").  The

12  following is a summary of the Agreement's pertinent terms.  Parties in interest are

13  encouraged to review the Agreement for its full terms and conditions.

14        In full settlement of the disputes over the amount and priority of the claim filed by

15  Travelers, the Trustee and Travelers agree that Travelers will hold a general unsecured

16  claim in the reduced amount of $3 million.  In addition, the Trustee agrees to dismiss the

17  appeal of the Travelers' judgment filed by the Debtor in the Ninth Circuit.  Finally, the

18  Agreement includes mutual general releases.

19                                              **IV.**

20       **THE SETTLEMENT SHOULD BE APPROVED BECAUSE IT IS FAIR,**

21           **EQUITABLE AND IN THE BEST INTEREST OF THE ESTATE**

22        Federal Rule of Bankruptcy Procedure 9019 provides that "on motion by the

23  trustee and after notice and a hearing, the court may approve a compromise or

24  settlement."  Fed. R. Bankr. P. 9019.  Compromise is favored over continued litigation.

25  See In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986) (citing Port O'Call

26  Investment Co. v. Blair (In re Blair), 538 F.2d 849, 851 (9th Cir. 1976)).  A compromise

27  should be approved if it is "fair and equitable."  In re Woodson, 839 F.2d 610, 620 (9th Cir.

28  1988); In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986), cert. denied, 479 U.S.

1  854 (1986); Burton v. Ulrich (In re Schmidtt), 215 B.R. 417, 424 (9th Cir. B.A.P. 1997)

2  (considering whether a compromise is fair and equitable for the creditors and whether it is

3  in the best interests of the estate).  "Whether a compromise will benefit or harm the

4  Debtor is immaterial."  Burton v. Ulrich (In re Schmidtt), 215 B.R. at 424.

5       In determining whether to approve a compromise or settlement, the court must

6  consider the following factors:

7            1.    the probability of success in the litigation;

8            2.    the difficulties, if any, to be encountered in the matter of collection;

9            3.    the complexity of the litigation involved, and the expense,

10                 inconvenience and delay necessarily attending it; and

11           4.    the paramount interest of the creditors and a proper deference to

12                 their reasonable views.

13  In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988); In re A & C Properties, 784 F.2d 1377,

14  1381 (9th Cir. 1986).  When considering these factors, the court need "only canvass the

15  issues."  In re Schmitt, 215 B.R. at 423 (citing In re Blair, 538 F.2d at 851-52); Cosoff v.

16  Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2nd Cir. 1983), cert. denied, 464 U.S.

17  822 (1983).  "A mini trial on the merits is not required."  In re Schmitt, 215 B.R. at 423.  A

18  compromise or settlement should be approved unless it "fall[s] below the lowest point in

19  the range of reasonableness."  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599,

20  608 (2nd Cir. 1983), cert. denied, 464 U.S. 822 (1983); see also In re A & C Properties,

21  784 F.2d 1377, 1381 (9th Cir. 1986) (holding that a settlement should be approved if it is

22  reasonable given the particular circumstances of the case), cert. denied, 479 U.S. 854

23  (1986).

24       The compromise approval process does not contemplate that a bankruptcy court

25  will substitute its business judgment for that of a trustee.  To the contrary, a settlement

26  that has been negotiated by a trustee, as representative of the estate, is entitled to

27  deference.  See In re Morrison, 69 B.R. 586, 592 (Bankr. E.D. Pa. 1987) ("The objecting

28  creditors may not substitute their judgment for that of the Trustee.").

1    Applying the A&C factors to the Agreement supports the Trustee's determination

2    that the settlement is in his best business judgment.

3    **A.    Probability of Success in the Litigation**

4    The Trustee has concluded that this first A&C factor weighs heavily in favor of the

5    settlement as it is unlikely that the claim will otherwise be reduced.  Although the

6    judgment was entered after the Debtor defaulted, it was not done so lightly.  The District

7    Court required Travelers to present evidence and argument as to why it was entitled to

8    an over $3 million judgment.  Travelers did so.  And the District Court entered Judgment.

9    Thereafter, and after extensive briefing including with regard to Debtor's Motion for

10    Sanctions against Travelers, and a hearing, the District Court denied Debtor's Motion to

11    set aside the Judgment.  In the transcript of the hearing, a copy of which is attached as

12    **Exhibit 3** to Seror Decl. and which Transcript was submitted to this Court on December

13    6, 2023, [Dkt. No. 222], the District Court stated at the beginning of the hearing, at p.8:14

14    – 9:6"

15    THE COURT: All right. Okay. So we're here on a couple
       motions to set aside the default judgment and then motions
16    for sanctions. Um, where do I begin? I guess I'll just be direct.
       Mr. Morales [Counsel for Debtor], I mean seems to me like
17    this is a little too late. I mean you're raising all these claims
       that have been raised and have been litigated, uh, pretty
18    thoroughly, um, and your primary claim is that your client
       wasn't served. That's been litigated thoroughly against your
19    client. Um, and again, maybe I'm missing something here, it
       just seems like we're trying to, uh, delay judgments and I'm
20    not sure this is the -- the forum to do that. just seems like your
       client made a decision and that's their right, but it didn't end
21    up the way they wanted to.

22    At the conclusion of the hearing and after the District Court gave the Debtor's

23    counsel the opportunity to change its tentative ruling, the District Court denied the Motion.

24    In part relying on the decision by this Court, the District Court was emphatic in its

25    conclusion, stating at p. 17:14-18:19:

26    I mean the record is pretty strong here. I mean it's litigated to
       the nth degree. … I think the indemnity clause is clear in this
27    case that DK was going to have to indemnify Travelers
       against any claims of the lienholder. Travelers attempted
28    numerous times and the Court's already found that Travelers

> properly served your client … I mean the bankruptcy judge
> stated, Kessler's pattern of behavior is indicative of a scheme
> and evidences her attempt to hide her assets from the
> creditors. I think the record here does demonstrate Ms.
> Kessler bears some responsibility in what caused the default
> judgment. I don't think there's a meritorious defense. I think
> reopening the   litigation at this stage would prejudice the
> defendant. And so the motion to set aside is denied and
> related to that, the motion for sanctions is also denied
> because I don't think Travelers acted in bad faith.

In light of the foregoing, the Trustee has considered the evidence and believes that he would have a difficult time succeeding on the merits if he were forced to litigate the claim which in essence would require him to take over the appeal of the Judgment.

**B.   The Difficulties, If Any, To Be Encountered In The Matter Of Collection**

The Second <u>A&C</u> factor, difficulties of collection, is not an issue as this Claim is by Travelers against the estate and not a claim by the estate against Travelers.

**C.   The Complexity Of The Litigation Involved, And The Expense, Inconvenience And Delay Necessarily Attending It**

The analysis of this third <u>A&C</u> factor also supports the settlement.  The litigation giving rise to the Travelers claim and the Travelers litigation with the Debtor has taken over 16 years.  As noted above, the judgment underlying the claim is on appeal. Although the Debtor is currently pursuing the appeal, to date her attorneys have not been successful in representing her.  The Trustee would need to consider whether to take over the appeal and request supplemental briefing if appropriate.  The Trustee would thus have to incur fees to get up to speed on all of the facts and the law cited and review years of pleadings, transcripts and orders. Once fully briefed and argued and likely after having to wait years, there are two potential outcomes:  1) The Ninth Circuit could affirm the Judgment and so the Claim will be significantly higher than the settlement amount it will be the amount of the judgment plus additional attorneys fees; or because 2) The Ninth Circuit could reverse and remand the matter back to the District court for trial on the merits of the Claim which again would be extremely costly.

1  Regardless of whether the litigation stops at the Ninth Circuit or continues in the

2  District Court, the delay of the matter will be significant, cost the estate attorneys fees

3  and costs and possibly expert fees and costs and likely delay resolution of the case for

4  years.

5  **D.    The Paramount Interest Of The Creditors And A Proper Deference To**

6  **Their Reasonable Views**

7  As with the first three, the application of this fourth and final <u>A&C</u> factor, supports

8  settlement.  The paramount interest of creditors which a bankruptcy court must consider

9  in deciding whether to approve a proposed compromise, generally reflects not only the

10  desire of creditors to obtain the maximum possible recovery, but also their competing

11  desire that the recovery should occur in the least amount of time possible.  See <u>In re</u>

12  <u>Marples</u>, 266 B.R. 202, 206 (Bankr. D. Idaho 2001); <u>In re Lake City RV, Inc.</u>, 226 B.R.

13  241, 243-44 (Bankr. D. Idaho 1998).  Here, the estate is not in the position to fund

14  lengthy, difficult, and potentially uncertain litigation.  The settlement resolves the

15  competing and existing claims between the parties in a manner meant to avoid further

16  administrative expenses and also will facilitate the distribution of assets in an orderly

17  fashion which will allow the chapter 7 case to be timely administered.

18  As noted earlier, generally, a court should approve a proposed settlement so long

19  as it is above "the lowest point in the range of reasonableness," giving deference to a

20  trustee's reasonable business judgment.  See <u>In re Receivership Estate of Indian</u>

21  <u>Motorcycle Mfg., Inc.</u>, 299 B.R. 8, 21 (D. Mass. 2003) ("The court may give substantial

22  deference to the business judgment of a bankruptcy trustee when deciding whether to

23  approve a settlement").

24  As a result of the Agreement, the Trustee has been able to keep administrative

25  costs low as the Trustee will not have to expend funds on litigation.  At the same time, the

26  Agreement reduces the claim by over $900,000.00 and reclassifies the secured claim as

27  unsecured so that it does not come ahead of but is pari passu with all unsecured

28  creditors.

1    Based on the foregoing, the Trustee submits that the settlement is fair and

2   equitable, in his best business judgment and should be approved.

3                                     **V.**

4                   **<u>EFFECT OF SETTLEMENT ON ESTATE</u>**

5    As noted above, the settlement reduces the general unsecured claims by over

6   $900,000 and stops costly litigation.  What the ultimate result of this settlement will be on

7   distributions , however, is unknown as the Trustee was only recently appointed and has

8   only just begun to collect information to identify the assets of this estate.

9                                     **VI.**

10                            **<u>CONCLUSION</u>**

11    Based on the foregoing, the Trustee respectfully requests that the Court enter an

12   order:

13        1.    Granting the Motion;

14        2.    Approving the settlement with Travelers;

15        3.    Authorizing the Trustee to take such other and further action as may be

16   necessary by the terms of the Agreement; and

17        4.    Granting such other relief as the Court deems just and proper.

18

19   DATED: February 12, 2024          **Greenspoon Marder LLP**

20

21                              By: <u>/s/ *Elissa D. Miller*</u>
                                    Elissa D. Miller
22                                  Attorneys for David Seror, Chapter 7 Trustee

23

24

25

26

27

28

## <u>DECLARATION OF DAVID SEROR IN SUPPORT OF</u>

## <u>MOTION TO APPROVE SETTLEMENT</u>

I, David Seror, declare:

1.      I am an attorney licensed to practice in the State of California and before this Court.  I am the duly qualified and acting chapter 7 trustee for the estate of the Debtor Drita Pasha Kessler (the "Debtor") as described herein.  I know all of the facts set forth from my own personal knowledge and based on information and belief from my review of documents and other investigation I have conducted in this case.

2.      I make this Declaration in support of my Motion to Approve a Settlement of Travelers' Claim.  Attached hereto as **Exhibit 1** is a true and correct copy of my Agreement with Travelers.

3.      The facts underlying the Motion are as follows:

4.      On December 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11, Subchapter V of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Case").  The case was converted to one under Chapter 7 on December 15, 2023, and I was appointed to serve as chapter 7 trustee and have been serving in that capacity since.

5.      Based on my investigation and review of the Debtor's Schedules and Statement of Financial Affairs, discussion with Debtor's counsel and counsel for creditors and counsel for the Debtor's children, I determined that prepetition, the Debtor was in the art business.  I also learned that prepetition, she had had been involved in contentious litigation with another art dealer and then with Travelers Insurance.  While the litigation with Travelers was pending, the Debtor had transferred and/or caused to be transferred two unencumbered homes, one in Van Nuys, CA and one in Topanga Canyon, CA (along with the vacant land adjacent to the Topanga Home).  I was also advised that there may have been other transfers of personal property as well as claims against third parties.

6.      With regard to the Debtor's litigation with Travelers, I reviewed pleadings and other documents and spoke with Travelers.  I learned that prior to 2018, Travelers

had provided coverage to City Art, Inc., which was involved in litigation commenced by

the Debtor.  After the Debtor prevailed in that litigation, and before payment of the

Judgment, the Debtor fired her attorney, Franklin R. Fraley, Jr., dba Fraley & Associates

("Fraley") and entered into a settlement agreement with Travelers.  Pursuant to a

settlement agreement, Travelers paid the Debtor approximately $6.46 million and in

exchange, the Debtor agreed to indemnify Travelers in the event that Fraley sought

payment from Travelers.

7.      Subsequent thereto, Fraley commenced and prevailed in an arbitration

against the Debtor for the payment of its fees, which award was confirmed by the

Los Angeles Superior Court on July 9, 2018.  On January 29, 2018, after the issuance of

the arbitration award, Fraley commenced an action against Travelers and others in the

United States District Court, Central District of California, Case No. 2:18-cv-00722-AB-

JPR (the "2018 Case") for the balance due on its arbitration award due to Travelers'

failure to recognize Fraley's attorney's lien.

8.      In the 2018 Case, Travelers filed a third-party claim against the Debtor

pursuant to the aforementioned indemnity provision in its settlement agreement.  The

Debtor did not appear or respond to the 2018 Case and default judgment was entered in

favor of Travelers and against the Debtor.  While the 2018 Case was pending, Travelers

and Fraley settled their dispute on August 31, 2021, and Travelers paid Fraley

$3,561,541.47.  Thereafter, on January 11, 2022, the Court in the 2018 Case, issued an

Amended Default Judgment in favor of Travelers and against the Debtor in the amount of

$3,877,966.39 plus applicable interest.  A copy of the Judgment is attached hereto as

**Exhibit 2.**  A true and correct copy of the Transcript from the hearing on the Motion to

Set aside the Default Judgement is attached hereto as **Exhibit 3**.

9.      Eight months later, after this Bankruptcy case was filed, the Debtor filed a

Motion to set aside the judgment in favor of Travelers in the 2018 Case.  The District

Court denied the motion on October 20, 2023.  The Debtor appealed the denial of the

1    motion and the judgment, which is currently pending in the Ninth Circuit Court of Appeals

2    as case No. 23-3410.

3        10.    On March 9, 2023, Travelers filed its Secured Proof of Claim in the amount

4    of $3,913,765.25 based on the Judgment and its recordation of an abstract of judgment.

5        11.    After my appointment, I reached out to Travelers counsel to better

6    understand the basis for and amount of its claim.  After negotiations, I reached the

7    settlement, which is memorialized in the Agreement, Exhibit 1.

8        12.    In entering into this settlement, I considered each of the <u>A&C</u> factors.  First I

9    considered the probable success in the litigation and concluded that this factor weighs

10   heavily in favor of the settlement as it is unlikely that the claim will otherwise be reduced.

11   Although the judgment was entered after the Debtor defaulted, it is my understanding that

12   it was not done so lightly.  The District Court required Travelers to present evidence and

13   argument as to why it was entitled to an over $3 million judgment.  Travelers did so.  A

14   true copy of the Judgment is attached hereto as **Exhibit 2.**   Thereafter, and after briefing

15   and a hearing, the District Court denied Debtor's Motion to set aside the Judgment and to

16   sanction Travelers.  I have reviewed the transcript of the hearing, a copy of which is

17   attached hereto as **Exhibit 3.**  From the transcript it appears that the District Court

18   thoughtfully considered each of the issues raised by the Debtor and found them to be

19   without merit.  The District Court also considered comments made by this Court

20   regarding the Debtor's conduct.

21       13.    I considered the second <u>A&C</u> factor, difficulties of collection and determined

22   this is not an issue in this case.  The Claim is against the estate.  The estate does not

23   have a claim against Travelers.

24       14.    The third <u>A&C</u> factor also supports the settlement.  I have been advised that

25   the litigation giving rise to the Travelers claim and the Travelers litigation with the Debtor

26   has been pending for over 16 years.  As noted above, the judgment underlying the claim

27   is on appeal.  Although the Debtor is currently pursuing the appeal, to date her attorneys

28   have not been successful in representing her.  I would need to consider whether to take

1  over the appeal and request supplemental briefing if appropriate.  The estate would thus

2  have to incur fees to get up to speed on all of the facts and the law cited and review

3  years of pleadings, transcripts and orders.  I believe that at the end of the day there are

4  likely only two potential outcomes:  1) The Ninth Circuit could affirm the Judgment and so

5  the Claim will be significantly higher than the settlement amount it will be the amount of

6  the Judgment plus additional attorneys fees; or 2) The Ninth Circuit could reverse and

7  remand the matter back to the District court for trial on the merits of the Claim which

8  again would be extremely costly.

9      15.    I also considered the paramount interest of creditors, the final A&C factor.

10  Regardless of whether the litigation stops at the Ninth Circuit or continues in the District

11  Court, the delay of the matter will be significant, cost the estate attorneys fees and costs

12  and possibly expert fees and costs and likely delay resolution of the case for years.  This

13  is not in the creditors' or the estate's best interest.

14      16.    Based on all of the foregoing, it is my opinion that the settlement is fair and

15  equitable and should be approved.  Among other things, it reclassifies the Travelers claim

16  from secured to unsecured and reduces the amount by over $900,000.  This is a direct

17  benefit to the other unsecured creditors.  Moreover, it ends what would potentially be

18  lengthy and costly litigation for the estate with an uncertain outcome.

19      17.    As noted above, the settlement reduces the general unsecured claims by

20  over $900,000 and stops costly litigation.  What the ultimate result of this settlement will

21  be on distributions, however, is unknown as I have only recently been appointed and

22  have only just begun to collect information to identify the assets of this estate.

23      18.    Based on the foregoing, I respectfully request that this Motion be granted

24  and the Settlement be approved.

25      I declare under penalty of perjury that the foregoing is true and correct and that

26  this declaration was executed on February 13, 2024, at Woodland Hills, California.

27

28                                            _____
                                              David Seror

# EXHIBIT 1

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between David Seror, solely in his capacity as trustee (the "Trustee") of the estate of Drita Pasha Kessler (the "Debtor"), and Travelers Property Casualty Company of America ("Travelers"). The Trustee and Travelers may hereinafter be referred to individually as a "Party" and collectively as the "Parties."

## RECITALS

A.    On December 29, 2022 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the Bankruptcy Code commencing the above-captioned bankruptcy case (the "Case"). The case was converted to one under Chapter 7 on December 15, 2023, and David Seror was appointed to serve as chapter 7 trustee and has been serving in that capacity since.

B.    Following his appointment, the Trustee reviewed the documents filed while the case was pending in Chapter 11, investigated the facts, spoke with creditors and parties in interest, including attorneys for the Debtor, and interviewed the Debtor at her First Meeting of Creditors.

C.    Among other things, the Trustee learned that prior to 2018, Travelers had provided coverage to City Art, Inc., which was involved in litigation commenced by the Debtor. After the Debtor prevailed in that litigation, and before payment of the Judgment, the Debtor fired her attorney, Franklin R. Fraley, Jr., dba Fraley & Associates ("Fraley") and entered into a settlement agreement with Travelers. Thereafter, Travelers and the Debtor entered into a settlement agreement pursuant to which Travelers paid the Debtor approximately $6.46 million and in exchange, the Debtor agreed to indemnify Travelers in the event that Fraley sought payment from Travelers.

D.    Subsequent thereto, Fraley commenced and prevailed in an arbitration against the Debtor for the payment of its fees, which award was confirmed by the Los Angeles Superior Court on July 9, 2018.

E.    On January 29, 2018, after the issuance of the arbitration award, Fraley commenced an action against Travelers and others the United States District Court, Central District of California, Case No. 2:18-cv-00722-AB-JPR (the "2018 Case") for the balance due on its Arbitration award due to Traveler's failure to recognize Fraley's attorney's lien.

F.    In the 2018 Case, Travelers filed a third-party claim against the Debtor pursuant to the aforementioned indemnity provision in its settlement agreement.

G.    The Debtor did not appear or respond to the 2018 Case and default judgment was entered in favor of Travelers and against the Debtor. While the 2018 Case was pending, Travelers and Fraley settled their dispute on August 31, 2021, and Travelers paid Fraley $3,561,541.47. Thereafter, on January 11, 2022, the Court in the

2018 Case, issued an amended default judgment in favor of Travelers and against the Debtor in the amount of $3,877,966.39 plus applicable interest (the "Default Judgment").

H.    The Debtor moved to set aside the Default Judgment from the 2018 Case with the United States District Court for the Central District of California, which Court denied the motion. The Debtor appealed the denial of the motion and the judgment, which appeal is currently pending in the Ninth Circuit Court of Appeals as case No. 23-3410.

I.    On March 9, 2023, Travelers filed a secured proof of claim in the Debtor's estate in the amount of $3,913,755.25 (Claim No. 5-1) (the "Claim").

J.    The Trustee is aware that the Debtor has raised issues as to the amount of the Claim.  Travelers contends the Debtor's contentions are without merit. Travelers has provided the Trustee with evidence, to the Trustee's satisfaction, to document the amount of the Claim. The Trustee contends the Claim is not secured by any property of the Bankruptcy Estate.

K.    Following his appointment and after engaging in the investigation set forth above, the Trustee entered into negotiations with Travelers and the Parties reached the settlement memorialized by this Agreement.

NOW THEREFORE, in consideration of the foregoing recitals and the mutual covenants, conditions, promises, and agreements contained herein, and for other good and valuable consideration, the receipt of which is hereby acknowledged, the Parties agree as follows:

## ARTICLE 1
## APPROVAL ORDER AND BINDING EFFECT

**1.1.    Binding Effect.**  This Agreement shall become effective and binding only upon entry by the Bankruptcy Court of a final order approving the Agreement (the "Approval Order").  The Approval Order is "final" after it is entered unless an appeal is timely filed and a stay pending appeal is obtained.  In the event of a timely-filed appeal and stay, the order shall become final if and when the appeal is resolved in favor of the Trustee.  In the event the stay pending appeal is lifted prior to the resolution of the appeal, the order shall become final upon the lifting of the stay pending appeal.  The "Effective Date" of this Agreement shall be the first business day after the Approval Order becomes final.

**1.2.    Court Approval.** Following execution of this Agreement by each of the Parties, the Trustee will promptly file a motion to approve this Agreement with the Bankruptcy Court.  The Trustee shall use his best efforts to obtain the Bankruptcy Court's approval of the Motion and this Agreement, and the Parties shall cooperate in this regard and in defending against an appeal of the Court's approval of the Motion.

**1.3.    Termination of Agreement.**  In the event that this Agreement is not approved by the Bankruptcy Court with a final Approval Order, with the exception of Article I of this Agreement, this Agreement shall become null and void and of no force or effect.

**ARTICLE 2**
**TERMS OF SETTLEMENT**

**2.1.**    Upon entry of the Approval Order:

(a)    Claim No. 5-1 shall be deemed allowed as a general unsecured claim in the amount of $3 million;

(b)    The Trustee and Travelers shall submit a stipulation to dismiss the appeal from the Default Judgment pending in the Ninth Circuit referenced in the Recitals; and

(c)    The Trustee and Travelers release and discharge each other of all current and potential claims, as provided by Article 4.

**ARTICLE 3**
**REPRESENTATIONS AND WARRANTIES**

**3.1.    No Undisclosed Inducements.**  The Parties represent that they have entered into this Agreement in reliance on their own investigation and that no representations, warranties, or promises other than those set forth in this Agreement were made by the Parties or their agents, employees, or counsel to induce either Party to enter into this Agreement.

**3.2.    Representation by Counsel.**  Each Party represents that he or she has obtained  independent legal advice with respect to this Agreement, the subject matter of this Agreement, the facts referred to above, and any rights or asserted rights arising therefrom.  The Parties acknowledge that they are executing this Agreement voluntarily, without any duress or undue influence.

**3.3.    Authority to Execute Agreement.**  The Parties warrant and represent that they are authorized to execute this Agreement on behalf of the respective parties and in their respective capacities as indicated below, provided however that the Trustee's execution of this Agreement is specifically subject to the approval of the Bankruptcy Court as provided for herein.

# ARTICLE 4
## RELEASE OF CLAIMS

**4.1.    Release of Claims by the Trustee.**  Except as otherwise provided in this Agreement, and effective only upon (a) approval of the Agreement by the Bankruptcy Court the Trustee, for and on behalf of the Estate and his successors (collectively, the "Trustee Releasing Parties") shall release and discharge Travelers, and its respective officers, directors, agents, attorneys, and employees from any and all claims, demands, controversies, actions, causes of action, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated, relating to the Debtor and the instant bankruptcy case.  For the avoidance of doubt, and notwithstanding this Release of Claims by the Trustee, nothing set forth herein shall affect the treatment of the Claim as an allowed general unsecured claim in the amount of $3 million.

**4.2.    Release of Claims by Travelers.**  Except as otherwise provided in this Agreement, and except for the Allowed Claim as set forth herein, Travelers, for itself and its officers, directors, agents, attorneys, employees successors, assigns, grantees, and affiliates (collectively, the "Travelers Releasing Parties"), shall release and discharge any and all claims or interests which the Travelers Releasing Parties may now own or hold, or may have previously owned or held, or may in the future own or hold, against the Trustee and the Estate and their respective agents, attorneys, and employees from any and all claims, demands, controversies, actions, causes of action, suits, proceedings, obligations, liabilities, fines, penalties, costs, expenses, attorneys' fees, and damages of whatsoever character, nature, or kind, in law or in equity, whether known or unknown, fixed or contingent, and liquidated or unliquidated.

**4.3.    Final Release and Bar**.  The Parties hereby acknowledge that it is their intention that this Agreement shall be effective as a full and final release of, and as a bar with prejudice to, each and every claim which the parties have or had against one another as is applicable, directly or indirectly.  In connection with such waiver and relinquishment, the parties acknowledge that they or their attorneys may hereafter discover facts different from or in addition to the facts that they now know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to hereby fully, finally, absolutely, and forever release any and all claims released above, which now do exist, may exist, or have existed between them, and that in furtherance of such intentions the release as given herein by the parties shall be and remains in effect as a full and complete release of any and all claims notwithstanding the discovery of any such different or additional facts.

The Parties acknowledge that they have read and are familiar with, and/or have been advised by their legal counsel of, the of California Civil Code § 1542, which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
> THAT THE CREDITOR OR RELEASING PARTY DOES

NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER
FAVOR AT THE TIME OF EXECUTING THE RELEASE
AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE
MATERIALLY AFFECTED HIS OR HER SETTLEMENT
WITH THE DEBTOR OR RELEASED PARTY.

The Parties acknowledge and agree that this Agreement releases all claims as
allowed by law existing or arising prior to the execution of this Agreement which the
Parties may have against each other, whether such claims are now known or unknown,
suspected or unsuspected.

## ARTICLE 5
## GENERAL PROVISIONS

**5.1.    Integration.**  This Agreement sets forth the entire agreement between the
Parties with regard to the subject matter hereof and no change, modification,
amendment, termination or discharge of this Agreement shall be binding unless made in
writing and executed by each of the parties.  All agreements, covenants,
representations and warranties, express or implied, oral and written, of the parties with
regard to the subject matter hereof, are contained in this Agreement and the documents
referred to herein or implementing the provisions hereof.  No other agreements,
covenants, representations or warranties, express or implied, oral or written, have been
made by any party to another party with respect to the subject matter of this Agreement.
All prior and contemporaneous conversations, negotiations, possible and alleged
agreements and representations, covenants and warranties with respect to the subject
matter hereof are waived, merged herein, and superseded hereby and thereby.

**5.2.    No Third-Party Beneficiaries.**  This Agreement is not for the benefit of
any person who is not a party signatory to this Agreement or who is not specifically
named as a beneficiary in this Agreement, and the provisions of this Agreement are not
intended to affect the rights of any party or non-party against any person or entity who is
not a party signatory to this Agreement or who is not specifically named as a beneficiary
in this Agreement.

**5.3.    Attorneys' Fees.**  With respect to any suit or proceeding involving the
enforcement of this Agreement, including, but not limited to, instituting any action or
proceeding to enforce any provisions of this Agreement, to prevent a breach of this
Agreement, for damages by reason of any alleged breach of any provisions of this
Agreement, or for a declaration of a Party's rights or obligations under this Agreement,
the ultimate prevailing Party shall be entitled to recover from the losing Party or Parties,
in addition to such other relief as may be granted, his/her reasonable attorneys' fees
(other than the attorneys' fees and costs to prepare this Agreement and seek
Bankruptcy Court approval of this Agreement).

**5.4.    Survival.**  It is expressly understood and agreed by each of the Parties
that nothing provided for in this Agreement is intended to nor does it release any claims
arising out of breach of this Agreement, or any representations contained herein or

made in connection herewith.  All representations, warranties and covenants herein shall survive the execution of this Agreement.

**5.5.    Further Documentation.**  Following the date hereof, the parties must take such action and execute and deliver such further documents as may be reasonably necessary or appropriate to effectuate the intention of this Agreement.

**5.6.    Governing Law.**  This Agreement and the rights and obligations of the parties hereunder shall be construed, interpreted and enforced in accordance with the laws of the State of California.

**5.7.    Jurisdiction.**  In the event a dispute arises under this Agreement, the Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce this Agreement.

**5.8.    Interpretation.**  This Agreement shall be treated as jointly drafted and will not be construed against any Party as drafter.  Furthermore, in the event of any ambiguity in or dispute regarding the interpretation of this Agreement, the interpretation will not be resolved by any rule of interpretation providing for interpretation against the Party who causes the uncertainty to exist or against the draftsperson.

**5.9.    Meaning of Pronouns and Effect of Headings.**  As used in the Agreement and attached exhibits, the masculine, feminine and/or neuter gender, in the singular or plural, shall be deemed to include the others whenever the text so requires. The captions and paragraph headings in the Agreement are inserted solely for convenience or reference and shall not restrict, limit or otherwise affect the meaning of the Agreement.

**5.10.    Counterparts and Electronic Signatures.**  This Agreement may be executed in multiple counterpart copies, each of which shall be deemed an original, but all of which together shall constitute one agreement.  A signature sent and received by facsimile or other electronic means shall constitute an original signature for purposes of this Agreement.  An electronic signature shall constitute an original signature for purposes of this Agreement.

**5.11.    Severability.**  In the event that any covenant, condition or other provision contained in this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, the same shall be deemed severable from the remainder of this Agreement and shall in no way affect, impair or invalidate any other covenant, condition or other provision contained herein, so long as such severance does not materially affect the consideration given or received herein or the general intent hereof.  If such condition, covenant or other provision shall be deemed invalid due to its scope or breadth, such covenant, condition or other provision shall be deemed valid to the extent that the scope or breadth is permitted by law.

**5.12.    Waiver.**  No breach of any provision herein can be waived unless in writing.  Waiver of any one breach of any provision hereof shall not be deemed to be a waiver of any other breach of the same or any other provision hereof.  No failure or

delay on the part of any Party to exercise any right hereunder, nor any other indulgence of such Party, shall operate as a waiver of any other rights hereunder, nor shall any single exercise by any Party of any right hereunder preclude any other or further exercise thereof.  The rights and remedies herein provided are cumulative and not exclusive of any right or remedies provided by law.

  **5.13. Binding on Successors.**  This Agreement shall be binding upon and inure to the benefit of the successors, assigns, heirs, executors, administrators, etc. of each of the Parties, including but not limited to any successor trustee and the Debtor after the case is dismissed or closed.

  **5.14. No Assignments or Delegation of Rights.**  Neither Party hereto has assigned or delegated any rights to any other party or person any of the rights or interests related to any claim which may be subject to the terms of this Agreement.

  **5.15. Further Assurances.**  The Parties shall take all further acts and sign all further documents necessary or convenient to effectuate the purpose of this Agreement.

  **5.16. Full Authority to Sign Agreement.**  Any individual signing on behalf of any Party hereto expressly represents and warrants to each other Party that he or she has full authority to do so and to bind such Party hereto and, in the case of the Trustee, to bind the Estate, subject only to approval of the Bankruptcy Court.

  **5.17. Parties to Bear Own Costs.**  Each party shall be responsible for the payment of its own costs, attorneys' fees, and all other expenses in connection with negotiation, preparation, execution, and approval of this Agreement.

  **5.18. Recitals Acknowledged.**  The Recitals are true and correct to the best of the Parties' knowledge, and hereby adopted by the Parties.

  **5.19. Notices.**  Any notice by any Party to any other Party may be made by e-mail and delivered to the other Party at the address below until written notice of a different email address is given by the Party.  Any payments to be made pursuant to this Agreement shall be deemed made only upon actual receipt.

  <u>**To the Trustee**</u>:
David Seror, Bankruptcy Trustee for Drita Pasha Kessler
c/o BG Law
21650 Oxnard St., Suite 500
Woodland Hills, CA 91367
dseror@bg.law

with a copy to:
Elissa D. Miller, Esq.
Greenspoon Marder
1875 Century Park East, Suite 1900
Los Angeles, CA 90067
elissa.miller@gmlaw.com


**To Travelers**:
Jeff A. Winchester, AVP, Subrogation Complex Claim Unit
P.O. Box. 5076
Hartford, CT 06102-5076
jwinches@travelers.com

with a copy to:
S. Nathan Park, Esq.
The Watergate Building
2600 Virginia Avenue Northwest, Sixth Floor
Washington, District of Columbia 20037
park@snparklaw.com

IN WITNESS WHEREOF, the Parties hereto hereby execute this Settlement

Agreement as of the date of final signature below.

DATED: February 9th, 2024


David Seror, solely in his capacity as Chapter
7 Trustee of the Estate Drita Pasha Kessler


DATED: February 9th, 2024        Travelers Property Casualty Company of America


By:    _Jeff A Winchester_
Its    Associate Vice President

# EXHIBIT 2

JS-6

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANKLIN R. FRALEY, JR., an individual and d/b/a FRALEY & ASSOCIATES,<br><br>        Plaintiff,<br><br>Vs.<br><br>TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation; FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., a Wisconsin corporation; and DOES 1-10,<br><br>        Defendants. | ) CASE NO. 2:18-cv-00722-AB (JPRx)<br>)<br>)<br>)<br>) **AMENDED JUDGMENT FOR**<br>) **DEFENDANTS/THIRD-PARTY**<br>) **PLAINTIFFS TRAVELERS**<br>) **PROPERTY CASUALTY**<br>) **COMPANY OF AMERICA AND**<br>) **FIDELITY AND GUARANTY**<br>) **INSURANCE UNDERWRITERS,**<br>) **INC. ON THIRD-PARTY**<br>) **COMPLAINT AGAINST DRITA**<br>) **KESSLER AND DK ART**<br>) **PUBLISHING, INC.** |
| TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, a Connecticut corporation; FIDELITY AND GUARANTY INSURANCE UNDERWRITERS, INC., a Wisconsin corporation,<br><br>        Third-Party Plaintiffs,<br><br>Vs.<br><br>DRITA KESSLER, an individual; DK ART PUBLISHING, INC., a California corporation,<br><br>        Third-Party Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

The Motion by Defendants/Third-Party Plaintiffs Travelers Property Casualty Company of America and Fidelity and Guaranty Insurance Underwriters, Inc. (collectively "Travelers") to Correct or Amend Judgment Against Third-Party Defendants Drita Kessler ("Kessler") and DK Art Publishing, Inc. ("DK Art"), (Dkt. No. 155) came on regularly for hearing on December 3, 2021.

After consideration of the points and authorities, declarations and evidence filed in relation to the Motion, as well as oral argument concerning said Motion, the Court finds (1) the Judgment against Kessler and DK Art (collectively "DK/K") entered herein on July 23, 2019 in favor of Travelers ("Judgment"), (Dkt. No. 127), is limited to damages sustained by Travelers through the date of the Judgment, July 23, 2019, (2) this Court intended the Judgment against DK/K to be corrected or modified to reflect the amount of any subsequent damages sustained by Travelers in relation to any appeal of the Judgment by Plaintiff Franklin R. Fraley, Jr. d/b/a Fraley & Associates ("Fraley"), (3) Travelers sustained such damages from July 24, 2019 through September 2021, totaling $3,660,559.97, due to Fraley's appeal of the Judgment, and (4) Kessler and DK Art are jointly and severally liable for said damages totaling $3,660,559.97, as set forth in the Court's written Order granting the Motion dated December 3, 2021, (Dkt. No. 167).

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT** Drita Kessler and DK Art Publishing, Inc., jointly and severally, shall pay Travelers Property Casualty Company of America and Fidelity and Guaranty Insurance Underwriters, Inc. a total of $3,660,559.97 as damages sustained by Travelers from July 24, 2019 through September 2021 in relation to Fraley's appeal of the Judgment. Further, said amount is due and owing to Travelers in addition to other amounts owed to Travelers as a result of the Judgment, if any, including, but not limited to, damages for attorney's fees and costs incurred by Travelers from February 21, 2018 to July 23, 2019 in the amount of $217,406.42, plus accrued

-2-
AMENDED JUDGMENT

1    interest on that amount as set forth in the Judgment.

2        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT** Drita

3    Kessler and DK Art Publishing, Inc., jointly and severally, shall pay Travelers

4    Property Casualty Company of America and Fidelity and Guaranty Insurance

5    Underwriters, Inc. post-judgment interest on the unpaid principal amount of this

6    Judgment from the date of entry of this Judgment until paid in full at the rate

7    required by 28 U.S.C. §1961, based on the date of this Amended Judgment.

8        The Pretrial Conference and Jury Trial dates are vacated.

9

10   Dated:   January 11, 2022

11                                     Hon. André Birotte Jr.
                                       United States District Court
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 3

1    Brett H. Ramsaur, Bar No. 281566
     RAMSAUR LAW OFFICE
2    27075 Cabot Road, Suite 110
     Laguna Hills, CA 92653
3    Telephone:    949.200.9114
     Facsimile:    949.222.3453
4    Email:        brett@ramsaurlaw.com

5    Attorney for Travelers Property
     Casualty Company of America

6

7                **UNITED STATES BANKRUPTCY COURT**

8                **CENTRAL DISTRICT OF CALIFORNIA**

9                **SAN FERNANDO VALLEY DIVISION**

10

11   In re:                                    |    Case No. 1:22-bk-11504-VK

12   DRITA PASHA KESSLER, dba Art Addict        |    Chapter 11
     LLC and dba DK Art Publishing Inc.,
13                                              |    **DECLARATION OF BRETT H.
                       Debtor.                  |    RAMSAUR RE SUBMISSION OF
14                                              |    DISTRICT COURT TRANSCRIPT TO
                                                |    THE COURT**
15

16        I, Brett H. Ramsaur, declare as follows:

17        1.    I am over the age of 18 years old and have personal knowledge of the matters set

18   forth in this declaration and if called to testify I could and would do so competently.

19        2.    I am an attorney licensed to practice law before all state and federal courts in the

20   State of California. I am the principal attorney at Ramsaur Law Office ("Firm"), one of the

21   attorneys of record in this action for Travelers Property Casualty Company of America

22   ("Travelers").

23        3.    On October 20, 2023, a hearing was held in the United States District Court for the

24   Central District of California in the matter of *Franklin R. Fraley v. Travelers Property Casualty*

25   *Company of America*, case no. CV 18-722-AB on Drita Pasha Kessler's ("Debtor") Motion to Set

26   Aside Default Judgment (the "Hearing").

27        4.    At a subsequent hearing in this case, the Court requested that Travelers obtain a

28   transcript of the district court hearing for submission herein.

                                          DECLARATION OF BRETT H. RAMSAUR

5.    In compliance with the Court's directive, my firm obtained a transcript of the district court hearing.  A true and correct copy of the transcript of the district court hearing, as prepared by Laura Miller Elias, CSR 10019, Federal Official Court Reporter, is attached hereto as **Exhibit 1**.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this 6th day of December 2023, at Tacoma, Washington.

/s/ Brett H. Ramsaur
Brett H. Ramsaur

# EXHIBIT 1

1

1                    UNITED STATES OF AMERICA
                  UNITED STATES DISTRICT COURT
2                CENTRAL DISTRICT OF CALIFORNIA
                       WESTERN DIVISION
3
                          - - -
4                HONORABLE ANDRE BIROTTE JR.
        UNITED STATES DISTRICT JUDGE PRESIDING
5                         - - -

6
     FRANKLIN R. FRALEY,                )
7                                       )
                 PLAINTIFF,             )
8                                       )
     VS.                                )    CASE NO.:
9                                       )    CV 18-722-AB
     TRAVELERS PROPERTY CASUALTY        )
10   COMPANY OF AMERICA, ET AL.,        )
                                        )
11               DEFENDANT.             )
     _____)
12

13

14
              REPORTER'S TRANSCRIPT OF PROCEEDINGS
15
                 FRIDAY, OCTOBER 20, 2023
16
                   LOS ANGELES, CALIFORNIA
17

18

19

20

21

22

23
                 LAURA MILLER ELIAS, CSR 10019
24            FEDERAL OFFICIAL COURT REPORTER
                350 WEST 1ST STREET, ROOM 4455
25             LOS ANGELES, CALIFORNIA 90012
                   PH:  (213) 894-0374


                  UNITED STATES DISTRICT COURT

1    APPEARANCES OF COUNSEL:

2

3    ON BEHALF OF THIRD PARTY PLAINTIFF TRAVELERS:

4

5            WESTON AND AGNESS LLP

6            BY:  AARON C AGNESS, ESQ.

7                 LEO ASHLEY, ESQ.

8            1960 EAST GRAND AVENUE

9            SUITE 400

10           EL SEGUNDO, CA 90245

11

12           S. NATHAN PARK PLLC

13           BY:  NATHAN PARK, ESQ.

14           1919 M STREET NW

15           SUITE 410

16           WASHINGTON, DC 20036

17

18    ON BEHALF OF DEFENDANT DRITA KESSLER:

19           MORALES LAW FIRM

20           BY:  DAVID MORALES, ESQ.

21           99 SOUTH ALMADEN BOULEVARD

22           SUITE 600

23           SAN JOSE, CA 95113

24

25

UNITED STATES DISTRICT COURT

1

2                                INDEX

3

4

5      PROCEEDING                                    PAGE

6

7      MOTIONS TO SET ASIDE

8      THE DEFAULT

9      MOTION FOR SANCTIONS                              4

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

1       LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 20, 2023; 11:01 A.M.

2                           - - -

3               THE CLERK:  Calling Item No. 3.

4               Case No. 18-722.

5               Franklin R. Fraley versus Traveler's Property

6       Casualty Company of America, et al.

7               Counsel, please state your appearances.

8               MR. MORALES:  Good morning, Your Honor.  David

9       Morales appearing on behalf of defendants Drita Kessler and

10      DK Art Publishing, Inc.  Also present today is Mr. Pena, he's

11      bankruptcy counsel.  He's here on Zoom.

12              THE COURT:  I'm sorry, who?

13              MR. MORALES:  Mr. Leonard Pena.  He's here on Zoom.

14      He represents Ms. Kessler in the bankruptcy matter and he's

15      here to answer any questions the Court may have regarding the

16      bankruptcy case or with regard to any facts that were cited

17      in the record, uh, subsequent to the default judgments in

18      this case by Mr. Park.

19              THE COURT:  All right.  Thank you.

20              And for plaintiff.

21              MR. AGNESS:  Good morning, Your Honor.

22              Aaron Agness for third party plaintiffs Travelers

23      Property Casualty Company of America and Fidelity and

24      Guaranty Insurance Underwriters, Inc.

25              THE COURT:  Mr. Park?


                    UNITED STATES DISTRICT COURT

1          MR. PARK:  Good morning, Your Honor.  My name is

2    Nathan Park.  I am also appearing on behalf of Travelers.

3          THE COURT:  Okay.  Mr. Ashley.

4          MR. ASHLEY:  Good morning, Your Honor.  I'm here on

5    behalf of Travelers Property Casualty Company of America,

6    Fidelity and Guaranty Insurance Underwriters, Incorporated.

7          THE COURT:  And then there's Mr. Go.

8          MR. GO:  Yes, Your Honor.  My name is Robert Go.

9    I'm the sub-Chapter 5 trustee for Ms. Kessler's bankruptcy

10   case.  I'm just monitoring this so I was just gonna go on

11   mute and turn off my camera if that's okay?

12         THE COURT:  That's fine.

13         MR. GO:  Thank you, Your Honor.

14         THE COURT:  All right.  Okay.  So we're here on a

15   couple motions to set aside the default judgment and then

16   motions for sanctions.  Um, where do I begin?  I guess I'll

17   just be direct.  Mr. Morales, I mean seems to me like this is

18   a little too late.  I mean you're raising all these claims

19   that have been raised and have been litigated, uh, pretty

20   thoroughly, um, and your primary claim is that your client

21   wasn't served.

22         That's been litigated thoroughly against your

23   client.  Um, and again, maybe I'm missing something here, it

24   just seems like your client made a decision and that's their

25   right, but it didn't end up the way they wanted to, and it

UNITED STATES DISTRICT COURT

1    just seems like we're trying to, uh, delay judgments and I'm

2    not sure this is the -- the forum to do that.

3         I'll give you an opportunity to be heard, but

4    that's sort of my -- my take as I read through all the papers

5    and the replies and, uh, the motions for sanctions, but I'll

6    give you an opportunity to be heard, sir.

7         MR. MORALES:  Thank you very much, Your Honor.

8         One of my concerns, Your Honor, is the fact that in

9    the third party complaint, the third party Travelers

10   represented to this Court that, uh, the third party

11   defendants had actual notice of this proceeding.  That

12   representation was untrue.  Um, they did not notify

13   Ms. Kessler.

14        THE COURT:  How do you -- how do you define actual

15   notice?  Meaning that she knew or they complied with the

16   rules for service cause it seems to me that that's the

17   distinction.  She may not have known like meaning someone

18   didn't knock on her door and tell her, but I don't think that

19   Travelers violate any rules.  In fact I think they followed

20   the rules for process and did so validly.  Um, and if they

21   did, does it matter whether or not your client quote, unquote

22   had "actual notice"?

23        MR. MORALES:  So let me address both of those

24   points, Your Honor.  The point that I was making initially is

25   that, uh, Travelers represented to this Court that the

UNITED STATES DISTRICT COURT

1    defendants, third party defendants, had actual notice.  They

2    said we contacted them.  This is what they put in their

3    complaint.  They said we contacted them.  We notified them of

4    Fraley's claims and they -- they refused to indemnify us.  So

5    they falsely --

6              THE COURT:  Or I thought was it refuse?  They said

7    they did not or refuse; right?

8              MR. MORALES:  They did not slash refuse to.

9              THE COURT:  Right, but again, we're all wordsmiths

10   in this business; right?  And so did not slash refuse could

11   mean by not doing so, they in essence refused to do so;

12   right?

13             MR. MORALES:  Right.  And so my point is that

14   the -- the third party -- that Travelers mislead this Court

15   into believing that they had actually communicated directly

16   with, uh, with the third party defendants.

17             THE COURT:  Why do you believe it was misleading?

18   You're saying that the service, what they represented in

19   serving them in your mind was direct communication,

20   eye-to-eye, face-to-face, words-to-words?

21             MR. MORALES:  No, Your Honor.  So I'm focusing on

22   two separate things here.  I'm not getting to the proof of

23   service yet.

24             THE COURT:  Okay.

25             MR. MORALES:  Now, there's a body of law where

UNITED STATES DISTRICT COURT

8

1  courts have said okay, they haven't strictly complied with

2  the rules of service, but they had actual notice.  And so

3  there's certainly some discretion the court has where a party

4  has actual notice.  And so if that were the case here, then I

5  think we would have some challenges with regard to the

6  service of process issue.

7        The point I'm trying to make is that Travelers

8  explicitly mislead this Court into believing that the

9  defendants had actual notice of Fraley's claims and that

10  they -- then this is what I think is misleading.  They

11  refused to or weren't able, whatever the language is they did

12  with a slash which is clearly vague and misleading, it

13  indicates to this Court that they had actual notice and they

14  refused to appear.

15        And then in all their papers, they continue to be

16  misleading because they argue they chose not to be here.

17  They didn't want to be here.  This is -- this is -- they're

18  absconding.  They're casting all these aspersions and saying

19  these things that are not true.  There's no evidence in the

20  record supporting any of this.  They don't cite any evidence

21  in the record.

22        There's case law that says that they're required

23  to, um, and so if we start with the fact that -- and -- and

24  Travelers does not dispute this fact.  They admit that

25  they -- that they -- that that statement to this Court was

UNITED STATES DISTRICT COURT

1    not true.

2          THE COURT:  Well, we'll hear from Travelers in a

3    moment.  I don't think that they admit that.

4          MR. MORALES:  Well, the reason I say --

5          THE COURT:  And it's ironic somewhat that you're

6    suggesting that because you're playing games with words now;

7    right?

8          MR. MORALES:  Let me be more clear.  I apologize,

9    Your Honor.  They appear to concede that it's true because

10   they don't dispute it in their papers.  What they say in

11   their papers is which I also think is misleading, they say at

12   about the time we filed a motion to dismiss, we emailed her.

13   And so their argument is hey, we may not -- so the

14   implication is we may not have notified her at the beginning

15   as we represented to this Court that we did.  That may not

16   have been true, but we did eventually notify her.

17         And there's case law that says look, if you

18   received notice, and I don't know that she received that

19   email notice at all, but the case law says just because

20   somebody emails you during the course of a case, doesn't mean

21   you have to show.  If you haven't been served, there's no

22   obligation to show up at that point.  So my point is that

23   they made a misrepresent to this Court that these defendants

24   had actual notice.

25         And I think if they had actual notice and they had

```
1    chosen to not appear, then -- then Travelers' arguments would

2    make sense.  And that there may be an argument to vary from

3    the actual rules of service of process.  I think once we

4    understand that is the fact here that they didn't have actual

5    notice, then the service has to actually be proper.  It has

6    to be proper.

7         And so what they did, what Travelers did is they

8    said look, we tried to serve her 11 times at an address where

9    she didn't live and we tried to serve her there, we couldn't

10   get in.  So that doesn't even count as diligence under the

11   case law that we've cited.  They didn't dispute any of the

12   cases that we cite.  They didn't cite any cases going the

13   other way.

14        So I think it's pretty clear that they didn't

15   provide, uh, subsequent -- they didn't have sufficient

16   diligence because they tried to serve her at the wrong

17   address.  I'm not saying it's their fault they didn't know

18   the address.  That's fine.  That happens all the time where

19   we don't know the address for a party, but the law provides

20   easy ways to serve them.  In this particular case, they could

21   have simply served the Secretary of State.

22        If they wanted to serve DK Art Publishing, they

23   could have served the Secretary of State and then service

24   would have been proper.  It's a simple process.  I've done it

25   myself, and it's under the Corporate Code section.  It think
```

UNITED STATES DISTRICT COURT

1    it's 1707, but it's cited in my papers.  What they did is

2    they said okay, we're not going to actually serve her or her

3    business at the address where she actually is.  We're going

4    to go ahead and serve her at a commercial mail receiving

5    agency where neither of them actually has a mailbox.

6            A different business named Art Addict, LLC which

7    happens to be Ms. Kessler's business, but it's a different

8    party all together, happened to have a mailbox at that

9    commercial mail receiving agency.  So what they said is look,

10   we found this other business that has a mailbox there.  We're

11   gonna go serve her and DK Art Publishing via that commercial

12   mail receiving agency.

13           But the way that the law works is it says if you

14   have no other address for a person, then you can go ahead and

15   serve them at the commercial mail receiving agency in the

16   following way.  You have to go and you provide it to the

17   operator of the facility.  That person has to put the papers

18   into the mailbox within 48 hours and that person has to mail

19   the papers to the customer's address on file within five days

20   and they have to have a certificate of mailing.

21           So that process has to be completed.  It's very

22   clear what the process is if you're gonna serve somebody

23   through a private mailbox like that.  And none of that

24   happened in this case and Travelers admits that none of that

25   happened.  What they say instead is look, we didn't follow

UNITED STATES DISTRICT COURT

1    the procedures to serve somebody at a commercial mail

2    receiving agency.  What we followed was the procedure to

3    sub-serve somebody under 415.20 A and B.  And what we did

4    there is --

5              THE COURT:  And you're saying that they're not

6    authorized to do that?

7              MR. MORALES:  I didn't say that they're not

8    authorized to do that.  What I'm saying is that, well. . .

9              THE COURT:  I mean if they're allowed to do that,

10   what's the problem?

11             MR. MORALES:  There are a couple problems.  First

12   of all, the case law that I cited says that you cannot

13   substitute serve somebody at a commercial mail receiving

14   agency because the person with whom you leave the papers does

15   not have a sufficient relationship with the defendant to

16   insure that they're likely to get notice of the proceedings.

17   That's what the case law says.

18             So no, I think as a matter of law, you cannot

19   properly serve somebody through a commercial mail receiving

20   agency under substitute service under 415.20 A or B.  That's

21   what the case law that I cited says.

22             And then if you were to assume as Travelers does

23   that that's not the law, that you can substitute serve

24   somebody at a private mailbox where the person they leave the

25   papers with has no sufficient relationship with the

1    defendant, if you say okay, let's assume you can do that,

2    well, then at least you have to follow the law on substitute

3    service which they didn't do.

4           THE COURT:  Okay.  Mr. Agness, I'm sure you have

5    something to say in response or I'm guessing you might.

6           MR. AGNESS:  Yes, Your Honor, a correct prediction.

7    Let me just start by saying there's a lot of things that were

8    represented as being admitted to by the third party

9    plaintiffs.  I would say there's not one thing that was said

10   that was admitted to by us that was actually ever admitted to

11   by us.  Obviously, dispute all those issues.

12          Essentially, there's two issues I think that were

13   brought up.  The first one, just to be clear that Mr. Morales

14   is speaking of, is an allegation in the third party

15   complaint.  It's not an allegation that was used in the

16   default prove-up documents, in the motion for default, in any

17   of those documents.  It was an allegation in the third party

18   complaint about service.  As the Court expressly stated and

19   as the documents says, it says failed and/or refused.  It

20   doesn't say direct eye-to-eye.

21          On top of that, Your Honor, um, it's sort of

22   irrelevant to the whole purpose of this because it wasn't

23   something that was done in connection with the default

24   prove-up.  That being said we do have a letter that we sent,

25   Your Honor.  I don't know if we're able to share screens.

1    Mr. Ashley can put up a letter that was sent to -- who was

2    deemed to be counsel of record for Kessler at the time.  We

3    an email.  We're happy to submit a supplemental

4    declaration --

5         THE COURT:  Hold on.  You're breaking up for some

6    reason.  Start all over again if you wouldn't mind.  You were

7    asking whether you could share something on the screen and I

8    don't think we can, and I don't think we have time and I'm

9    not sure it's necessary, but go ahead.

10        MR. AGNESS:  And I was just gonna say, Your Honor,

11   I apologize.  Not sure why I was breaking up.  But we did, we

12   did send a letter to counsel for Drita Kessler and DK prior

13   to filing the suit.  The allegation is not a fraud on the

14   Court or whatever Mr. Morales is claiming and it wasn't even

15   relevant to the default issues.  That wasn't the basis for

16   it.  It's an allegation in the complaint, but it was truthful

17   and it was served on DK pursuant to substitute service so

18   that indemnity demand is built into that as well.

19        The second issue about -- about service is pretty

20   straight forward, Your Honor, in the papers.  Substitute

21   service was proper.  This has already been discussed with the

22   Court multiple times over as well under 415.20 A and B.  The

23   arguments that were brought up by Mr. Morales is about

24   subsection C which was not the service at the time.

25        Just overall, you know, a couple of things that

UNITED STATES DISTRICT COURT

1    stood out, Your Honor, in the reply papers, uh, just to be

2    brief cause I know the Court has a full calendar today, but

3    one thing that stood out to me when I went back and looked at

4    Ms. Kessler's declaration and the reply brief, when we're

5    talking about semantics, they very carefully say that they

6    did not get personally served with the third party complaint

7    which we're not saying they did.

8         We're saying it was substitute service.  And they

9    don't really ever say that they never got notice of the suit,

10   never got notice of the motion for default, never got notice

11   of any of this along the way.  In fact Footnote 2 in the

12   reply brief for the motion to set aside says it's not clear

13   whether they got the notice.  And we've shown the Court that

14   stuff was emailed basically as a courtesy going above and

15   beyond what was required under the law.

16        And we know that those email addresses were

17   actually active and there's not even a response that they

18   weren't received.  So not only is there service on the front

19   end, Your Honor, um, but there's also an ongoing effort to

20   keep them, you know, apprised.  And there's multiple

21   declarations explaining exactly what was done.  There's

22   nothing that's been shown to be incorrect nor would it from

23   us in filing it.

24        And on top of that, Your Honor, we also have

25   evidence of notice if you look at Document 256-2 that was

UNITED STATES DISTRICT COURT

1    attached to Mr. Park's declaration, Exhibit 5 at page 62.

2    Ms. Kessler, there's a note where she's calling, um, Morgan

3    Stanley asking about moving funds cause she's concerned about

4    another lien.  So there's evidence of awareness through --

5    through other evidence.

6           And the prejudice has been laid out, Your Honor, as

7    to why, uh, this is significant issue.  As we've shown the

8    bankruptcy judge already has, and it's in the papers, found

9    that Travelers showed the debtor had actual fraudulent

10   intent.  This is a significant issue, Your Honor, and unless

11   the Court has further questions, I think the Court's initial

12   comments about this being already litigated, too little too

13   late.

14          And, you know, I would add there seems to be

15   alternative motives as well for this procedure.  You know,

16   I'll submit at that point unless the Court has specific

17   questions.

18          THE COURT:  No, I don't have any questions.

19          MR. MORALES:  Your Honor, may I respond?

20          THE COURT:  Mr. Morales, briefly.

21          MR. MORALES:  Thank you, Your Honor.

22          First of all, I do object, Your Honor to counsel

23   making spurious allegations and disparaging allegations

24   regarding my clients about facts that are alleged to have

25   occurred after the default judgment.  It's not relevant at

1    all to these proceedings.

2            I did want to draw the Court's attention

3    specifically to the Bonita case which -- which specifically

4    addressed the issues.  Whether or not you can substitute

5    serve a party at a commercial mail receiving agency.

6            And then the other fact I'd like to point out to

7    the Court is the fact that the defendants in this particular

8    case weren't even actually customers of that commercial mail

9    receiving agency.  So I think, Your Honor, as a matter of

10   law, the judgment is actually void.  I think the law is clear

11   that it doesn't favor a default judgment particularly of this

12   size where there's any kind of doubt as to whether or not

13   service was proper.

14           THE COURT:  Well, I guess that's the issue if

15   there's any kind of doubt; right?  And your position is

16   there's doubt.  I have to be honest.  I don't have any doubt

17   about it, I just don't.  I mean the record is pretty strong

18   here.  I mean it's been litigated to the inth degree.  And

19   I'm not -- I'm not trying to shoot the messenger.  You're

20   trying to come in and do what you can on behalf of the

21   client.

22           I'm just telling you based on what I've heard today

23   and based on what I've read, I don't think there's good cause

24   to justify dismissing -- not that I don't think.  There is

25   not good cause to justify relieving DK from, uh, this

UNITED STATES DISTRICT COURT

1    judgment and so the motion's denied.

2         I think the indemnity clause is clear in this case

3    that DK was gonna have to indemnify Travelers against any

4    claims of the lienholder.  Travelers attempted numerous times

5    and the Court's already found that Travelers properly served

6    your client.  Um, again, you may disagree and think it's not

7    relevant, but I do think that the efforts in the underlying

8    litigation and the findings of the bankruptcy judge are

9    significant.

10        I mean the bankruptcy judge stated, Kessler's

11   pattern of behavior is indicative of a scheme and evidences

12   her attempt to hide her assets from the creditors.  So I

13   think the record here does demonstrate Ms. Kessler bears some

14   responsibility in what caused the default judgment.  I don't

15   think there's a meritorious defense.  I think reopening the

16   litigation at this stage would prejudice the defendant.

17        And so the motion to set aside is denied and

18   related to that, the motion for sanctions is also denied

19   because I don't think Travelers acted in bad faith.

20        Now, I -- I suspect you'll take this up to the

21   9th Circuit and if the 9th Circuit disagrees, so be it.  As

22   it relates to this matter now, that's why I'm ruling the way

23   I am right now.  You have a record by which you can decide

24   how you wish to proceed, but respectfully, the motions --

25   both motions are dismissed.


UNITED STATES DISTRICT COURT

1               All right.  Thank you, Counsel.

2               MR. MORALES:  Thank you very much, Your Honor.

3               THE COURT:  All right.

4               Thank you, counsel.

5               Uh, for the plaintiff, have a good day, everyone

6       and enjoy the weekend.

7               We're going to take a brief recess before we deal

8       with our next couple of matters.  We'll be back in 10

9       minutes.

10               MR. AGNESS:  Thank you, Your Honor.

11               (Proceedings were concluded at 11:21 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

```
 1

 2                    CERTIFICATE OF REPORTER

 3

 4   COUNTY OF LOS ANGELES       )

 5                               )   SS.

 6   STATE OF CALIFORNIA         )

 7

 8   I, LAURA ELIAS, OFFICIAL REPORTER, IN AND FOR THE UNITED

 9   STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA,

10   DO HEREBY CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE

11   FOREGOING PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET

12   FORTH; THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN

13   FORM BY MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO

14   FURTHER CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION

15   OF MY STENOGRAPHIC NOTES.

16

17

18   DATE:  DECEMBER 1, 2023

19

20       /s/  LAURA MILLER ELIAS

21   LAURA MILLER ELIAS, CSR 10019

22   FEDERAL OFFICIAL COURT REPORTER

23

24

25
```

UNITED STATES DISTRICT COURT

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
Ramsaur Law Office, 950 Pacific Ave, Ste 1030, Tacoma, WA 98402

A true and correct copy of the foregoing document entitled (*specify*): <u>DECLARATION OF BRETT H. RAMSAUR RE</u>
<u>SUBMISSION OF DISTRICT COURT TRANSCRIPT TO THE COURT</u>
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in
the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General
Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (date)
12/6/2023, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the
following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- **Michael Jay Berger    michael.berger@bankruptcypower.com,**
  **yathida.nipha@bankruptcypower.com;michael.berger@ecf.inforuptcy.com**
- **Shraddha Bharatia    notices@becket-lee.com**
- **Andre Boniadi    aboniadi@bzlegal.com**
- **Katherine Bunker    kate.bunker@usdoj.gov**
- **Robert Paul Goe (TR)    bktrustee@goeforlaw.com,**
  **kwareh@goeforlaw.com;bkadmin@goeforlaw.com;C187@ecfcbis.com;kmurphy@goeforlaw.com;rgoe@goeforl**
  **aw.com**
- **David C Nealy    David.Nealy@limnexus.com, mimi.cho@limnexus.com,griselda.luna@limnexus.com**
- **Leonard Pena    lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com**
- **Andrew Edward Smyth    office@smythlo.com**
- **James E Till    james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-**
  **lawgroup.com;sachie.fritz@till-lawgroup.com**
- **United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov**
- 

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (date) 12/6/2023, I served the following persons and/or entities at the last known addresses in this bankruptcy case or
adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class,
postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will</u>
<u>be completed</u> no later than 24 hours after the document is filed.

Please see attached.

☒ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method
for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (date) 12/6/2023, I served the
following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to
such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration
that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is
filed.

Pursuant to General Order 23-01, compliance with LBR 5005-2(d) for documents under 25 pages is temporarily
suspended.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/6/2023 | Alecia J. Rivas | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                    **F 9013-3.1.PROOF.SERVICE**

049

Served by First Class Mail, Postage Prepaid:

David P Morales
Pena & Soma, APC
402 South Marengo Ave., Suite B
Pasadena, CA 91101

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1875 Century Park East, Suite 1900, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*): **CHAPTER 7 TRUSTEE'S MOTION TO APPROVE SETTLEMENT WITH TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF DAVID SEROR IN SUPPORT THEREOF** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) February 13, 2024  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Shraddha Bharatia on behalf of Interested Party Courtesy NEF
notices@becket-lee.com

Andre Boniadi on behalf of Defendant Jacob Wizman
aboniadi@bzlegal.com

Katherine Bunker on behalf of U.S. Trustee United States Trustee (SV)
kate.bunker@usdoj.gov

Elissa Miller on behalf of Interested Party Courtesy NEF
elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com

Elissa Miller on behalf of Trustee David Seror (TR)
elissa.miller@gmlaw.com, emillersk@ecf.courtdrive.com;cheryl.caldwell@gmlaw.com

David C Nealy on behalf of Creditor Travelers Property Casualty Company of America
David.Nealy@limnexus.com, mimi.cho@limnexus.com,griselda.luna@limnexus.com

David C Nealy on behalf of Plaintiff Travelers Property Casualty Company of America
David.Nealy@limnexus.com, mimi.cho@limnexus.com,griselda.luna@limnexus.com

Leonard Pena on behalf of Attorney Pena & Soma, APC
lpena@penalaw.com, penasomaecf@gmail.com;penalr72746@notify.bestcase.com

Brett Ramsaur on behalf of Creditor Travelers Property Casualty Company of America
brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com

Brett Ramsaur on behalf of Defendant Travelers Property Casualty Company of America
brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com

Brett Ramsaur on behalf of Interested Party LIMNEXUS LLP
brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com

Brett Ramsaur on behalf of Plaintiff Travelers Property Casualty Company of America
brett@ramsaurlaw.com, alecia@ramsaurlaw.com;paralegal@ramsaurlaw.com

David Seror (TR)
dseror@bg.law, csalazar@bg.law;C133@ecfcbis.com;mgalvan@bg.law

Andrew Edward Smyth on behalf of Debtor Drita Pasha Kessler
office@smythlo.com

CC 56837593v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                      **F 9013-3.1.PROOF.SERVICE**

Andrew Edward Smyth on behalf of Defendant Drita Pasha Kessler
office@smythlo.com

Andrew Edward Smyth on behalf of Plaintiff Drita Pasha Kessler
office@smythlo.com

James E Till on behalf of Creditor Travelers Property Casualty Company of America
james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com

James E Till on behalf of Defendant Travelers Property Casualty Company of America
james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com

James E Till on behalf of Interested Party Courtesy NEF
james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com

James E Till on behalf of Plaintiff Travelers Property Casualty Company of America
james.till@till-lawgroup.com, martha.araki@till-lawgroup.com;myrtle.john@till-lawgroup.com;sachie.fritz@till-lawgroup.com

United States Trustee (SV)
ustpregion16.wh.ecf@usdoj.gov

☐ Service information continued on attached page.

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) February 13, 2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

| | |
|---|---|
| **Debtor**<br>Drita Pasha Kessler<br>6909 Texhoma Ave.<br>Van Nuys, CA 91406-4347 | The Honorable Victoria S. Kaufman<br>U.S. Bankruptcy Court<br>21041 Burbank Blvd., Suite 354<br>Woodland Hills, CA 91367 |

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| February 13, 2024 | Cheryl Caldwell | /s/Cheryl Caldwell |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

CC 56837593v1 This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                 **F 9013-3.1.PROOF.SERVICE**

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Dated:  February 15, 2024

Respectfully submitted,
WESTON & AGNESS LLP

By:  */s/ Aaron C. Agness*
     Aaron C. Agness
     Leo L. Ashley III
     Attorneys for Third-Party Plaintiffs-
     Appellees
     **TRAVELERS PROPERTY
     CASUALTY COMPANY OF
     AMERICA and FIDELITY AND
     GUARANTY INSURANCE
     UNDERWRITERS, INC.**